## Heath *against* Knapp.

An unexecuted warrant for land, in the hand of the deputy surveyor, is not the subject of levy and sale, as the property of the warrantee, upon a *fieri facias;* and if thus sold, a survey afterwards made upon it will enure to the benefit of the warrantee, and not of the sheriff's vendee.

ERROR to the common pleas of *Jefferson* county.

Elijah Heath against Joshua Knapp and others. Ejectment for 1634 acres of land.

The plaintiff gave in evidence two warrants to Robert Morris, dated March 5, 1795, for 1000 acres of land each, and a survey on one of 1025 acres, 112 perches, to Alexander W. Foster, in right of Robert Morris, made August 26, 1820, returned and accepted January 30, 1822. A survey upon the other made August 26, 1820, to Hugh Brady, in right of Robert Morris, returned and accepted February 20, 1821. Will of Robert Morris, dated June 13, 1804; proved May 29, 1806, devising his estate to Mary Morris. Will of Mary Morris, dated October 22, 1824; proved February 1, 1827, devising all her estate to her daughter, Maria Nixon. January 23, 1839, deed of Henry Nixon and wife, to Elijah Heath the plaintiff.

The defendants to maintain their titles gave in evidence a judgment in the supreme court, of Samuel Coots against Robert Morris, entered November 16, 1797, for 48 dollars 38 cents, upon which a *testatum fieri facias* issued to Northumberland county, to September term 1802, which was levied on the above described warrants, and they were sold by the sheriff on August 30, 1802, to Thomas Grant, for 7 dollars 41 cents. Will of Thomas Grant, dated May 12, 1815: deed, George Grant and others, devisees of Thomas Grant, dated July 15, 1838, to William P. Brady. December 12, 1819, deed, William P. Brady to Hugh Brady, for one of the surveys; and April 7, 1819, deed, William P. Brady to Alexander W. Foster, for the other survey. March 31, 1821, receipt to Alexander W. Foster for surveying fees. September 16, 1820, patent to Alexder W. Foster. May 3, 1832, deed, Alexander W. Foster to the defendants. After this evidence given by the defendants, the plaintiff called William P. Brady, who testified as to the sale of the warrants in the *testatum fieri facias* as follows:

Sheriff Vanderslice came to me with one Thomas Grant, to get these warrants at Northumberland county. Grant asked me if I had not some warrants; told him I had. He told me he brought the sheriff there to levy on them. I was not for giving them up; thought I had no right. I was the deputy surveyor at that time.

x.—2 k

They wanted the numbers, and I agreed after some time to give them up; thought no great harm in it. Sheriff took the numbers; he did not take them with him then, but appointed a day to sell, and I promised to deliver them on the day; he had them when he sold them; the warrants were in my office; came after them; they were sold at a public house—Adam Hesch's, two and a-half miles above Northumberland. Robert Morris was not present. I had no directions from Morris to give these warrants to the sheriff; the sheriff took the warrants, and did not return them to the deputy's office until after paid for. They had the endorsement of the sale by the sheriff on them when they came back.

The plaintiff then asked the instruction of the court upon the following points:

1. That the plaintiff has shown a good and sufficient legal title to the land in controversy.

2. That a copy of a warrant left in the hands of a deputy-surveyor to be executed, cannot be seized and sold by a sheriff.

3. That the sale by sheriff Vanderslice to Thomas Grant, passed no interest to the grantee, inasmuch as the lands called for in the warrants were not at the time in the county of Northumberland.

4. That the surveys on these warrants in this cause, when made, enured to the benefit of the warrantee, or his heirs or assigns, claiming by contract from or under the warrantee.

The court answered these points in the negative, and instructed the jury that the warrants were the subject of levy and sale as a chattel, and, that having been sold, the surveys made upon them enured to the benefit of the sheriff's vendee.

*Buffington* and *Forward,* for plaintiffs in error, cited *Cas. Tem. Hard.* 48, 53; *Addison* 20; *Doug.* 231; 4 *East* 510; 5 *Bos. & Pul.* 376.

*Foster,* for defendant in error, cited 2 *Serg. & Rawle* 54; 3 *Wash. C. C. Rep.* 81; 2 *Yeates* 308; 1 *Whart. Dig.* 495, No. 199; 17 *Serg. & Rawle* 350.

PER CURIAM.—Before survey-made, such a warrant gives no interest in land: and if it did, the land could be sold only in the county. What then is the nature of such a warrant, or of the right conferred by it? It is a mere license-authority to do a particular thing for the warrantee's benefit: it is an order to perform an act which may give him an estate in land, but in the mean time it is no more than a thing in action; and though equity might execute an agreement to transfer it, it is not assignable at law. Now at common law, a thing in action could not be seized in execution; and it will scarcely be pretended that a mere authority can. Could a marriage license, a lottery ticket, or a tavern-keeper's authority to retail, be levied and sold? These, though valuable, are so intimately

[Heath v. Knapp.]

associated with the person, as to be inseparable from it, without the assistance of a statute, even by the machinery of the law. The surveys made on these warrants, therefore, did not enure to the benefit of the person calling himself the sheriff's vendee, because, as the sale was a nullity, there could be no sheriff's vendee; and the direction given was improper.

Judgment reversed, and *a venire facias de novo* awarded.