# Fisher's Appeal.

An executor, who sells a lot of indescriptive warrants belonging to the estate of his testator, is not, in the absence of complicity, fraud, or disregard of the interest of the estate, liable to be surcharged with the profits made by locating the warrants.

An agent may lawfully purchase from his principal, if there be no fraud in the transaction.

An executor who sells to an agent of the estate, at a fair price, and without fraud, is not liable to be surcharged with the profits made by the agent out of his purchase.

APPEAL from the Orphans' Court of *Bedford county.*

This was an appeal by Naomi Fisher and others, the widow and heirs of Abraham Kerns, deceased, from the decree of the court below upon the account of Job Mann, one of the executors of the said Abraham Kerns.

Abraham Kerns died in 1828, and by his will, of which he appointed the accountant one of the executors, he provided as follows:—

"I do hereby authorize and empower the legal representatives of my estate, to sell and convey any part or the whole of my estate—time and terms at their discretion."

"I wish a sober and competent person or persons to be employed, as occasion may require, to look up and examine my lands—to ascertain their value, and to assist my executors to sell them—no sale should be made without actual knowledge of and surveying the respective tracts previous to closing a sale."

At the time of his death, the testator was the joint owner, with Samuel M. Barclay, of about 260 indescriptive warrants for lands in Bedford county, known as the "Dallas and Ingersoll war-

rants." An agreement was entered into between Kerns's executors and Barclay, that either of the parties should be at liberty to sell, for their own separate use, any of these warrants; and that the title to the same should be as firm in law, as if the deed poll were executed by all the parties. Neither party was to sell more than one-half of the whole number of warrants; and whenever sales were made by either party, the other was to be notified of it.

About 1842, William T. Dougherty was appointed the agent for the widow, and from that time he acted also as agent for the estate, with the knowledge and approbation of Mr. Mann, making sales, and having the general care of the lands. During the period of his agency, Judge Dougherty became the purchaser from Samuel M. Barclay, and from Kerns's executors, of several of the Dallas and Ingersoll warrants, which were located by him, and subsequently sold at a large profit.

Job Mann filed his administration account on the 15th April 1857, which was referred to an auditor, before whom Mrs. Naomi Fisher, who was the widow of Abraham Kerns, deceased, and F. C. Reamer and Georgiana R. his wife, M. R. Kerns and Mason Kerns, the heirs of the said Abraham Kerns, claimed to surcharge the accountant, with the profit made by Judge Dougherty on the sale of the lands located by him on these warrants.

The auditor refused to surcharge the accountant, and the court below confirmed his report; whereupon this appeal was taken by the widow and heirs.

*Cessna* and *Russell*, for the appellants, cited Fisk *v.* Sarber, 6 *W. & S.* 22; 3 *Ves.* 740; Whichcote *v.* Lawrence, 5 *Id.* 648; Campbell *v.* Walker, 13 *Id.* 601; Prevost *v.* Gratz, *Pet. C. C. R.* 373; 2 *Johns. Ch.* 252; 4 *Kent Com.* 438; 6 *Ohio* 93; 3 *Binn.* 54; 4 *Id.* 43; 7 *S. & R.* 230; 2 *Wh.* 53; 5 *Watts* 303; 7 *Id.* 387, 471, 412; 6 *W. & S.* 152, 401; 2 *Barr* 463; 9 *Id.* 203, 279; 1 *Harris* 636; 2 *Id.* 531; 4 *Id.* 499; 1 *Johns. Ch.* 620; *Story's Eq.* 318; 7 *W. & S.* 152, 402; 6 *Har. & Johns.* 67; 5 *N. H.* 492.

*King & Jordan*, for the appellees, cited Cadbury *v.* Duval, 10 *Barr* 272; Chorpenning's Appeal, 8 *Casey* 316; Fisk *v.* Sarber, 6 *W. & S.* 18; 2 *Williams on Executors* 1530 n.; McNair's Appeal, 4 *Rawle* 148; Pennypacker's Appeal, 2 *Harris* 430; Dillebaugh's Estate, 4 *Watts* 179; Calhoun's Estate, 6 *Id.* 185; *Story on Agency*, § 201.

The opinion of the court was delivered by

THOMPSON, J.—It is not easy to comprehend upon what principle Mr. Mann could be expected to be surcharged with the

[Fisher's Appeal.]

money made by Judge Dougherty, out the lands on which the warrants purchased were laid, without some evidence of complicity in the purchase, or fraud in selling, or a disregard of the interest of the estate in selling the warrants below their value, and at a sacrifice. Nothing of this is shown or pretended. There is not the slightest evidence that the estate lost anything by the sale of the warrants. What the purchaser made by industry and management, is, by no rule, the test of what the estate lost. *Non constat*, that the executor could, by any effort, as such, have made more out of the warrants than he sold them for. Unless this appears somehow or somewhere, there is no room for the rule of liability insisted on.

The doctrine that a trustee may not acquire an interest prejudicial to, or in conflict with, the interests of his *cestui que trust*, is a rule of public policy necessary to preserve honesty and fidelity in the administration of trusts, and is too well settled to be departed from: 3 *Binn.* 54; *Id.* 4, 43; 7 *S. & R.* 230; 5 *Watts* 303; 7 *Watts* 387, 412, 471; 6 *W. & S.* 18, 152, 402; 2 *Barr* 463; 9 *Id.* 203, 279; 1 *Harris* 636; 2 *Id.* 531; 4 *Id.* 499; 8 *Casey* 316.

There is no difficulty about the principle; its application is sometimes troublesome. A general agent could not, by his own act or procurement, invest himself with title to the property of his principal. Nor can an attorney at law acquire for himself a title to his client's property. But it never has been supposed that the principal might not sell to his agent, or the client to his attorney; and that their titles, thus acquired, would not be good in the absence of fraud on their part.

William T. Dougherty was a special agent of the estate of Kerns, appointed under the directions of the will, "to be employed as occasion might require, to look up and examine my lands, to ascertain their value, and assist my executors to sell them." He necessarily, if appointed under this clause, became the special agent of the executors, in regard to the real estate of the testator. I know of no rule of law that would have disabled the executors from selling, at a fair price, and for full value, any of the lands which they had power to sell, to Mr. Dougherty, even while he was thus acting. He could not control the sale; and if there was no fraud, there is no law nullifying it. In Fisk *v.* Sarber, 6 *W. & S.* 18, an assignee of an insolvent debtor was held not incapable of buying at a sheriff's sale of the real estate of the insolvent; and in Chorpenning's Appeal, 8 *Casey* 316, a guardian, with no funds of his ward in his hands, was held to be a fair purchaser of the ward's estate at a sheriff's sale.

But Dougherty was not a purchaser of real estate. He was the purchaser of three unlocated indescriptive warrants, on each of which could be located four hundred acres of land, if so much

[Fisher's Appeal.]

might be found. Such warrants have not been considered anything more than chattels: Shoemaker *v.* Huffnagle, 4 *W. & S.* 442; Heath *v.* Knapp, 10 *Watts* 405; *Jones on Land Office Titles,* § 33, and note (*t*). This being their character, Dougherty, in strictness, had no agency in regard to them. But even if he had, he engaged to pay the full price at which they had been held by the owners of them; and they were sold to him by his principals, without any evidence of fraud on his part. The land upon which they were laid, was improved land, to which the warrants in no manner or shape attached until, by consent of the improver, they were located upon it. This consent Dougherty obtained from those having the right to give it, and in which the estate had neither right nor concern. Out of this he made the money, in part, sought to be charged to the accountant. It is manifest, that there is no legal or just claim to it.

I put out of view the purchases made from Samuel M. Barclay. He had a right to sell, out and out, any of the warrants, not exceeding one-half of the whole, by the terms of the agreement between himself and the executors of Kerns, dated in 1847. The joint conveyance by the executors of Kerns and Barclay, afterwards, of these warrants, did not change the right of Barclay, under the agreement, to sell them. We think that the auditor presented a full and correct view of the whole case, and that the Orphans' Court were right in confirming it.

> Decree of the Orphans' Court affirmed at the costs of the appellants.