## Kramer, Appellant, *v.* Winslow.

*Practice—Supreme Court—Assignment of error to admission of evidence.*
An assignment of error to the admission of evidence, which does not
set forth the evidence admitted under the objection, is improper, and will
not be considered by the Supreme Court.

*Principal and agent—Purchase money of real estate.*
In an action by a principal to recover a balance of purchase money
claimed to have been retained by the agent in the sale of the principal's
real estate, where plaintiff asks the court to charge that defendant could
not make any profit out of the sale, it is not improper to affirm the point
with the qualification that if the jury should find the further fact, that the
interest or profit claimed by defendant was acquired by him after making
known all material facts to, and by the consent of, plaintiff, prior to the
sale, they should disregard the point.

Argued Oct. 7, 1892.   Appeal, No. 225, Oct. T., 1892, by
plaintiff, George Kramer, from judgment of C. P. Jefferson Co.,

Feb. T., 1886, No. 96, on verdict for defendant, R. C. Winslow. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit to recover balance of purchase money of real estate alleged to have been retained by defendant as agent of plaintiff.

The case was previously before the Supreme Court, and remitted for a new trial: See Kramer v. Winslow, 130 Pa. 496.

The facts appear by the charge of the court, as follows, by TAYLOR, P. J., of the 28th judicial district, specially presiding:

"The plaintiff claims to recover in this action from the defendant the sum of $3,624.34, with interest from Feb. 16, 1882. The nature of his claim is founded upon an alleged agency, which he said was created by him in virtue of a writing here, whereby he created Mr. Winslow, the defendant here, his agent for the sale of his interest, being the one fourth undivided interest in a certain tract of land in McCalmont township, the tract containing eleven hundred and twelve acres. He says that the land was sold for the sum of $44,497.50, and that the defendant as his agent only accounted to him for the sum of $7,500, with interest, and that he claims to recover in this suit the balance of what his one fourth interest sold for in addition to what he actually received from his alleged agent, Mr. Winslow, namely, the difference between about $11,000 and $7,500, or something near that. That the parties were tenants in common of this land, and that the plaintiff here was the owner of the undivided one fourth interest is not questioned; that there was a purchase money mortgage on the premises; that there were deferred payments (which were afterwards paid); that the plaintiff's interest in this land was incumbered by judgment liens and that it was agreed that in order to divest those liens a judicial sale of his interest in the lands was made. The sheriff's deed was made to E. H. Wilson and was duly acknowledged; Wilson represented the Mahoning Bank, a lien creditor, and although the property was knocked down for about the sum of $3,000 the sum of $7,000 was applied on the indebtedness of record against the plaintiff in favor of the Mahoning Bank, and the further sum of $500 was paid to him individually.

"The plaintiff gives in evidence two writings, one of some time in December, 1879, the date is not specified, it is only by

Mr. Winslow's testimony that the date is fixed as in December, 1879. That writing was simply a power of attorney authorizing Winslow to sell the plaintiff's interest in that land, and that was about all that amounted to. The second writing was dated Jan. 24, 1880. It reads as follows: 'Whereas, R. C. Winslow is negotiating with Eastern parties for the sale of the 1112 acre tract of land in McCalmont township, known as the Winslow and Hastings land, in which I have an undivided one fourth interest largely incumbered with judgments, therefore I hereby agree with the said R. C. Winslow as follows: For the purpose of enabling him to make a good title for said land I authorize him to sell my interest in the same at sheriff's sale and to purchase the same in his own name at a sum not exceeding say three thousand dollars. After which I promise to make him a quitclaim deed for any remaining interest that I might have, upon the following terms and consideration: The said R. C. Winslow agrees to pay for the same, as soon as the said sale is made and deed received, the sum of seven thousand five hundred dollars, as follows: One third in hand (providing that amount is not consumed in purchasing the land at sheriff's sale) and balance in two equal annual payments from date of deed, with interest on both payments for one year, by assignment of so much of the mortgage taken from the purchasers as will pay said George Kramer the balance of the seven thousand five hundred dollars. The said George Kramer to pay his proportion of all taxes due upon said land as soon as sale is made.

" ' Witness our hands and seals the 24th day of January, A. D., 1880.' Signed, ' George Kramer ' and ' R. C. Winslow.'

" The plaintiff's theory of this case and what he asks you to find is that, in the making of the sale, Winslow was acting as the agent of the plaintiff and that he not only agreed to sell the land for thirty thousand dollars, but that he agreed to pay him his equal share of what the land was actually sold for, and to account to him for every dollar of his share of the purchase money received, and that without any charges for expenses or commissions incident to the sale. (Now we are stating to you the plaintiff's theory and what he asks you to find.) That the defendant concealed the names of the parties purchasing and the price he was getting for the same; that when the second

agreement of January 24th was executed, and he agreed to take $7,500 for his one fourth interest, his agent, Mr. Winslow had actually consummated the sale of land for more than $44,700, and had received $500 of the purchase money upon the contract; that these acts were a fraud upon him (the plaintiff), and being such relieved the contract of sale, so far at least as the consideration of $7,500 named, and by reason of such fraudulent conduct the plaintiff is entitled to recover his one fourth of the actual sum received by Mr. Winslow, and that without any compensation being deducted for expenses incident to the sale.

" The defendant's theory and what he asks you to find is that the sale was made in good faith; that there was no concealment from the plaintiff; that he had all the information which he (Winslow) had; that at the time it was understood and agreed that Winslow was to have all the land could be sold for over the $30,000, for the expenses and time necessarily expended in making the sale, as he was to receive nothing unless the sale was consummated at a price exceeding $30,000; that the agreement or options to sell were in the hands of Mr. Benscoter, who had been for some two or three years then actively engaged trying to effect a sale, for which Mr. Winslow actually paid him in commissions the sum of $6,000; that at the time the second agreement was made and the $500 paid, he (Winslow) did not know himself who the parties were that had purchased. . . .

" The issue then, gentlemen, is narrowed to a very few legal propositions. First: Was Winslow the agent of Kramer in making the sale of his interest? Of that, gentlemen, we instruct you, as a matter of law, that the writing of December, 1879, defined him as being the agent of Kramer. Second: Did he sell the interest while acting as such agent, and did he account and pay over to the plaintiff all that he should have done? It was the duty of Winslow to keep Kramer advised of all the material facts, or inform him if he knew who the purchasers were and the amount of purchase money he was receiving. Did he do so? The plaintiff says he did not, and that there was no arrangement or agreement by the terms of which Winslow was to retain any portion of the purchase money as compensation for his services, expenses, etc. [The defendant

asks you to find upon this question that prior to the execution of the power of attorney in December, 1879, all of the parties interested, including Kramer, knew that efforts were being made to sell the land, and that before the execution of the paper of January 24, 1880, it was understood and agreed that Winslow was to sell the land so that it should net the parties not less than $30,000, and that they were to be relieved from all charges and expenses, and that any amount exceeding the $30,000 Winslow was to have in payment for his services and the expenses which he necessarily incurred in making that sale.] [3]  That is narrowed down to a very simple issue, gentlemen.

" If you find from the weight of the evidence which you deem credible that Winslow was the agent of Kramer, as we instructed you that he was, and acted in bad faith by concealing from Kramer any material fact, such as the parties purchasing or the amount he was to receive as purchase money, or any other act or thing contrary to the dictates of common honesty and good faith, and he (Winslow) received for the plaintiff's one fourth interest, about $11,000, and only accounted and paid to him about $7,500, the plaintiff would be entitled to recover the difference between the amount received and the amount actually paid to him (Kramer), with interest from the date when the money was received, without any deduction or abatement at all for expenses or anything else.

" [If upon the other hand you find that prior to the entering into the agreement in evidence the defendant acted fairly and honestly and that Kramer knew all the material facts relating to the sale of the land as fully as they were then known to Winslow, and with that knowledge Kramer entered into the contract of Jan. 24, 1880, wherein he agreed to receive the sum of $7,500 for his interest, and that any surplus received from the sale was to be retained by Winslow for his own absolutely, for services rendered, risks incurred, and expenses paid by him, you would be warranted in finding a verdict for the defendant.] [4]  If you find that Winslow was acting in good faith, as before explained, and made the sale in that manner, but that there was no agreement that he was to receive the surplus exceeding $30,000, then the plaintiff would be entitled to recover the difference between what the interest was

actually sold for and what was actually paid to Kramer, deducting commission and any other expenses of money paid out in the negotiation for and consummation of the sale.

" [Taking the testimony altogether, gentlemen, the burder. of proof is on the plaintiff. He must satisfy you reasonably from the weight of the evidence which you deem credible that his theory of this case is the correct one, except in so far as the writings of December, 1879, and Jan. 24, 1880, are concerned. So far as they are concerned the burden of proof is on the defendant to satisfy you of any alleged change in the agreement of Jan. 24, 1880. Taking the testimony, then, gentlemen, altogether, if so evenly balanced that you do not feel satisfied how to find, your verdict should be for the defendant. If for the plaintiff, you will find the amount including interest, as before stated. If for the defendant, simply for the defendant.] " [5]

" Plaintiff's point was among others as follows :

" 1. If R. C. Winslow, the defendant, was by the writing of December, 1879, constituted and appointed the agent of Geo. Kramer, the plaintiff, to sell his (Kramer's) interest in the McCalmont township lands, he, Winslow, could not during the continuance of said agency acquire any interest in the property adverse to Kramer nor make any profit out of the sale of the interest of Kramer in said land, and he, the defendant, must account in this action for the full amount for which he, Winslow, sold the interest. *Answer :* Affirmed, unless the jury further find that such interest or profit was acquired by Winslow after making known all material facts to, and by the consent of, Kramer prior to such sale." [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) admission of certain evidence, quoting the bills of exceptions, but not the evidence admitted ; (3–6) instructions, quoting them ; (7, 8) the general charge, as a whole, for reasons stated in the opinion of the Supreme Court.

*H. Clay Campbell, A. C. White* with him, for appellant, cited, Haines v. Stouffer, 10 Pa. 363 ; Youngman v. Miller, 98 Pa. 196.

*Charles Corbet* and *George A. Jenks, John E. Calderwood* with them, for appellee, cited, Janney v. Howard, 150 Pa. 339 , Collins v. Leafey, 124 Pa. 212.

PER CURIAM, January 3, 1893:

 The first and second specifications do not conform to the rules of court, and for this reason will not be considered.    The third, fourth, and fifth specifications allege errors in the general charge of the court.    A careful examination of the charge as a whole fails to disclose error in the portions complained of.

We think the qualification of the plaintiff's first point was proper.    See sixth specification.    The point as put was affirmed, but the court further instructed the jury that if in addition to the facts stated in the point the jury find the further fact, that the interest or profit claimed by Winslow was acquired by him after making known all material facts to, and by the consent of Kramer prior to said sale, they should disregard the point.    While this is not the precise language, it is the legal effect of the instruction.    We cannot see error in this.

The seventh specification alleges error in the general charge as a whole ; that it tended to and did mislead the jury, in that the court submitted to the jury facts of which there was no evidence, and submitted questions for the consideration of the jury that were admitted by the defendant himself on the witness stand.

We have already said that we failed to find error in the general charge as a whole.    An examination of the testimony does not show that the learned judge submitted to the jury facts of which there was no evidence, and we are unable to see that the submission of facts admitted by the defendant did the latter any harm, if they were so submitted.

The eighth specification is involved in the seventh and does not require discussion.

 Judgment affirmed.