## Shepard & Company, Appellant, *v.* Kaufman.

*Principal and agent—Real estate brokers—Real estate—Sales—Duty of principal to agent.*

An agent is disqualified from dealing with the property of his principal to his own advantage. He cannot buy his principal's property, even from the principal himself, except upon the fullest disclosure of every matter which may affect its value.

The law is well settled that an agent to sell land cannot himself become the purchaser, unless the owner, with a full knowledge of all the facts, consents thereto. The principle which renders an agent incompetent to purchase for himself renders him alike incompetent to sell to his wife.

In an action of assumpsit for commissions earned in the sale of real estate, judgment is properly entered in favor of the defendants, where the evidence established that the agent, without properly disclosing the facts to his principal, had negotiated a sale to his own wife. Such action constituted a constructive fraud and destroyed the agent's rights to any commissions on the sale.

Argued April 21, 1926.   Appeal No. 108, April T., 1926, by plaintiff, from judgment of C. P. Westmoreland County, November T., 1924, No. 46, in the case of Robert G. Shepard, trading as Shepard & Company, v. A. S. Kaufman and Susie E. Kaufman. Before Por-TER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAW-THROP and CUNNINGHAM, JJ.   Affirmed.

Assumpsit to recover commissions on the sale of real estate.   Before DOM, J.

The facts are stated in the opinion of the Superior Court.

The jury rendered a verdict in favor of the plaintiff. Subsequently the court, on motion, entered judgment in favor of the defendant non obstante veredicto.   Plaintiff appealed.

*Error assigned,* among others, was the decree of the Court.

*Robert W. Smith,* of *Smith, Best and Horn,* for appellant.

*Earl F. Reed,* of *Thorp, Bostwick, Stewart & Reed,* and with him *Wyant & Abraham* and *Clyde A. Armstrong,* for appellees.

OPINION BY PORTER, P. J., July 8, 1926:

This is an action of assumpsit by a real estate broker to recover commissions upon a sale of property of the defendants. The trial resulted in a verdict in favor of the plaintiff, but the court entered judgment in favor of the defendants non obstante veredicto, which action the plaintiff here assigns for error.

The plaintiff was employed by the defendants to find a purchaser for their property, at a price not less than fifty thousand dollars, and they agreed to pay him 3 per cent commission in case he effected the sale. Shortly after the defendants had so employed the plaintiff as their agent the plaintiff prepared and submitted a written agreement for the sale of the property of the defendants for the price of fifty thousand dollars; defendants' names appearing in said agreement as vendors and the name of "Robert G. Shepard or his assigns," as vendee. This agreement contained the following provisions, viz.: "Party of the first part [these defendants] is to pay Shepard & Company three per cent. commission on the amount of this sale." This agreement was duly signed and acknowledged by the parties; while it appeared upon its face to be a contract for the sale of the real estate of the defendants to this plaintiff, the testimony of the plaintiff at the trial clearly indicated that it was the understanding of the parties that the plaintiff was simply acting as the agent of the defendants and that the property was to be transferred to purchasers by the plaintiff secured, which testimony was corroborated by the defendant, Kaufman, and his witnesses. The plaintiff testified that Dr. Kaufman inquired of him at the time who the intended purchasers were and that he replied to that inquiry that he had three parties dickering for

the property. When asked whether Dr. Kaufman asked him the names of the parties who were dickering for the property, the plaintiff answered, "I suppose so." Counsel for defendants then asked: "Q. Don't you remember? A. I wouldn't have told him if he did. Q. Why wouldn't you have told him? A. Because it wasn't considered any of his business. Q. You didn't think it was necessary for you to tell him? A. No, sir; he told me to sell the property........Q. And then you had three people dickering for the property? A. I told him I had three parties dickering for the property. Q. You weren't the party purchasing this property yet your name was in the agreement? A. Me or my assigns. Q. When Mr. Kaufman asked you the names of the three parties you didn't give them to him? A. No, sir. Q. And you wouldn't have given them to him if they were buyers? A. I don't think I would have. Our town over there is pretty well cut up and it isn't good business to let it be known who our prospective purchasers are. We have about twenty-five real estate men. Q. Is it your practice to have your name inserted then when you have buyers? A. Me or my assigns." The written agreement had provided that the deed should be delivered on January 7, 1924, and a few days prior to that date the plaintiff notified the defendants to execute the deed to his wife. Before the deed was delivered the defendants notified plaintiff that they would not, in the circumstances, pay the $1,500 commission. The full amount of the fifty thousand dollars purchase money was, on January 7, 1924, paid by checks of the plaintiff and the deed was executed to his wife.

It clearly appears from the plaintiff's own testimony that he was the agent of the defendants for the sale of the property and that it was the understanding of the parties that the execution of the written agreement did not change the relation between them, but that the defendants would be bound to convey the

property to any purchaser to whom the plaintiff assigned the contract. The relation between these parties was a confidential one, and it was the duty of the plaintiff to exercise the utmost good faith in the entire transaction and to communicate to the defendants anything that he knew with regard to the business. The plaintiff was intrusted with the interests of the defendants and could not be allowed to make the business an object of interest to himself, either directly or indirectly, because, from a frailty of human nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interests at the expense of those whom he represents. The danger of temptation from the facility and advantage for doing wrong which a particular situation affords, does, out of mere necessity, work a disqualification. This plaintiff acting as agent for the defendants secured the conveyance of the property to his own wife, and not only concealed that fact from the defendants at the time the written agreement was executed but actually declared that he had three parties negotiating for the property, thus manifestly tending to deceive the defendants. In the law of principal and agent, nothing is better settled than that the agent is disqualified from dealing with the property of his principal for his own advantage. In dealings between principal and agent, or guardian and ward, or trustee and cestui que trust, the same principles prevail with a larger and more comprehensive efficiency; and the burden of proof is upon the agent, or guardian, or the trustee who claims a benefit, arising from the transaction, to show the utmost good faith on his part, that he took no advantage of his influence or knowledge, and that he brought everything to the knowledge of the other party which he himself knew. When the agent fails to meet this burden he cannot recover anything under the contract which he improperly secured: Everhart v. Searle, 71 Pa. 256; Rice v. Davis, 136 Pa.

439; Darlington's Estate, 147 Pa. 624; Finch v. Conrade's Executor, 154 Pa. 326; Wilkinson v. McCullough, 196 Pa. 205. It cannot be doubted that the plaintiff became possessed of an interest in the land when it was conveyed to his wife. The wife could not alienate it or mortgage it without the consent of her husband, and upon her death, in case he survives her he becomes entitled to a share of the property. There is, moreover, apart from this pecuniary interest, an intimacy of relation and affection between husband and wife, and of mutual influence of the one upon the other for their common welfare and happiness, that is absolutely inconsistent with the idea that the husband can occupy a disinterested position as between his wife and a stranger in a business transaction. He may, by reason of his great integrity, be just in such a transaction; but unless his marital relations be perverted, he cannot feel disinterested, and it is precisely because of this feeling of interest that the law forbids that he should act for himself in a transaction with his principal: Tyler v. Sanborn, 4 L. R. A. 218. The failure of this plaintiff to notify the defendants, prior to the execution of the written agreement upon which he relies, that the property was to be conveyed to the plaintiff's own wife was a constructive fraud and destroyed his right to any commissions upon the sale. The court did not err in entering judgment in favor of the defendants non obstante veredicto.

The judgment is affirmed.