## Woulfe v. Walsh

*Paul D. Nelson*, for plaintiff.
*Frank L. Guiliano*, for defendant.

LIPPINCOTT, J., November 27, 1972.—Plaintiff, a real estate broker, seeks specific performance of an agreement of sale entered into by him personally with defendant's decedent immediately after the property was listed with plaintiff by decedent for sale. The chancellor filed an adjudication and decree nisi in favor of plaintiff, and defendant's exceptions thereto have been argued before the court en banc.

The record discloses that decedent summoned plaintiff to his home on the morning of May 14, 1971, to

engage him as an agent for the purpose of selling his home. Decedent had had the house up for sale without success for a year with another broker. A previous agreement of sale, which involved FHA financing, had fallen through, much to decedent's dissatisfaction. Decedent was in his seventies and in declining physical health, although all of the evidence indicates that he was mentally alert and forceful. He was extremely anxious to move to another home in the mountains where he would have fewer responsibilities. Plaintiff advised decedent that he thought he could sell the property for $19,000—$19,500, and an exclusive agency agreement was entered into at the latter figure.

After the listing agreement was signed, decedent's neighbor and close friend, who was present throughout, mentioned that a few days previously decedent had offered to sell the property to the neighbor's father for $17,000. Plaintiff then offered to buy the property himself for that amount, which was refused, but decedent said he would sell to plaintiff for $18,000. After some haggling, decedent finally agreed to sell to plaintiff for $17,750 net, provided there was a concrete and irrevocable agreement with an immediate down payment of $3,500, approximately 20 percent, and final settlement within two months. The subject agreement of sale was thereupon entered into that afternoon, binding upon the heirs and administrators of decedent and calling for settlement on or before July 14, 1971. Plaintiff delivered his check for $3,500, which decedent cashed that very day.

Plaintiff thereafter attempted to resell the property and showed prospective purchasers through the home with decedent's express permission and cooperation. Ten days after the agreement was signed, plaintiff entered into an agreement to sell the property to a third party for $21,750. This agreement, which subse-

quently fell through, however, contained a contingency that the third party's home be sold for $20,000. While defendant suggests that plaintiff had this third-party transaction in mind when he contracted with decedent, there is nothing whatever on this record to support such an innuendo. In fact, when the third party was called by *defendant* as a witness, she testified to the contrary that she first contacted plaintiff about another matter at least four days after the agreement between plaintiff and decedent had been signed.

Decedent died on June 24, 1971, and defendant, as administratrix of his estate, refused to conclude the settlement under the agreement of sale, following which the present action for specific performance was brought.

Both sides agree that the principles enunciated in Sylvester v. Beck, 406 Pa. 607, 178 A.2d 755 (1962), are controlling. The facts therein are strikingly similar to those in the case at bar. Plaintiffs-owners listed a property with defendant real estate broker for sale at $15,000. After trying to sell it for several weeks, defendant offered to buy it himself for $14,000, and a written agreement of sale was entered into calling for settlement within three months. Defendant-broker thereafter negotiated a resale from himself to a third party for $25,000. The existence of this agreement was not disclosed to plaintiffs. At settlement with plaintiffs, defendant took title and on the same day sold to the third party in accordance with the subsequent agreement. In an action for damages, the jury rendered a verdict in favor of plaintiffs for $9,000. The Montgomery County court, however, reversed and entered judgment n.o.v. in favor of defendant. In upholding this ruling, the Supreme Court laid down the following principles, Sylvester v. Beck, 406 Pa. 607, 610, 611:

"There can be no doubt that an agent owes a duty of loyalty to his principal and in all matters, affecting the subject of his agency, he must act with the utmost good faith in the furtherance and advancement of the interests of his principal. This requires that he give the principal all information of the subject matter that comes to his knowledge: Shannon v. Baltz, 398 Pa. 431, 158 A. 2d 558 (1960); Kribbs v. Jackson, 387 Pa. 611, 129 A. 2d 490 (1957). An agent, who makes a profit in connection with transactions conducted by him on behalf of his principal is under a duty to give such profit to the principal: Johnson v. Nippert (No. 1), 294 Pa. 464, 144 Atl. 404 (1928); Restatement (2d), Agency, §388 (1958). However, an agent may lawfully purchase from his principal, if before the transaction there is a full disclosure of all pertinent facts by the agent to the principal: Fisher's Appeal, 34 Pa. 29 (1859); Shepard & Co. v. Kaufman, 88 Pa. Superior Ct. 57 (1926); Kramer v. Winslow, 154 Pa. 637, 25 Atl. 766 (1893). Nor does a former agency preclude a profit, when, with full disclosure to the principal, the former agent assumed the relationship of a purchaser: Delvitto v. Schiavo, 370 Pa. 299, 87 A. 2d 913 (1952)."

The sole issue, therefore, in the case at bar is whether there was a full disclosure of all pertinent facts by plaintiff, as agent, to decedent as principal, at the time the subject agreement of sale was entered into. The uncontradicted evidence fully supports the chancellor's finding that there was. In addition to plaintiff's testimony to this effect, such finding was supported by testimony of decedent's friend and next-door neighbor who was present during the entire transaction. He stated that plaintiff told decedent that if he was not in such a hurry, he could get him a better price for the house, but decedent indicated that

he wanted the house sold right away for cash. He fully confirmed that plaintiff advised decedent he was going to try to resell the house to someone else for a profit and decedent approved of this. This was also corroborated by the fact that decedent readily cooperated in permitting plaintiff to show the house to others immediately after the agreement was signed. At no time did decedent indicate any second thoughts or misgivings.

The evidence is also clear and convincing that decedent's mind was sharp and that he understood fully the nature of the transaction and its consequences. There was no evidence of deception, undue influence or duress. In fact, the contrary appears to have been true, since decedent drove a hard bargain in insisting upon a higher down payment than normal and a firm agreement without contingencies.

Defendant argues that the agreement is unconscionable. Under all of the circumstances, we do not believe so. The uncontradicted evidence shows that plaintiff indicated the property could be sold for $19,000—$19,500 and decedent was fully satisfied in signing the listing agreement accordingly, with a six percent commission to be paid plaintiff. Deducting the commission of $1,170 from $19,500, would leave a net to decedent of $18,330. The difference between this figure and $17,750 is $580. Computed further on a sales figure of $19,000 with a commission of $1,140 results in a net difference of only $110 above the $17,750 sales price to plaintiff. This was a small premium for decedent to pay in order to obtain the security of a concrete and firm agreement, with 20 percent down and settlement in 60 days.

Defendant also argues that the exclusive agency contract was not specifically terminated. This argument is without merit since decedent himself revoked

the listing agreement ipso facto when he signed the inconsistent agreement of sale with plaintiff.

It is further argued by defendant that a regulation of the State Real Estate Commission requires written notice to decedent of plaintiff's interest in the property. Section 15.4,2 pertaining to "Conflict-of-Interest Restrictions," states:

"No broker shall acquire an interest in or buy for himself, his firm or any members thereof or for a corporation in which he has any interest, property listed with him or his firm unless the broker first discloses in writing his interest and position to the listing owners."

We deem this regulation inapplicable to the factual situation herein presented. The purpose of this regulation seems to be to require a broker to disclose in writing any hidden or undisclosed interest he may have in the purchase of the property from his principal. In the present case, plaintiff of all times fully disclosed his own interest when he purchased for himself. In addition, even if the regulation is otherwise construed, plaintiff disclosed his own interest in writing by the very agreement of sale entered into with decedent.

While it is true that cases such as this are viewed with suspicion, we find that there is ample evidence to support the chancellor's findings that a full disclosure of all pertinent facts was made by plaintiff-broker and the transaction was entered into voluntarily and at arms-length with a legally competent seller.

## FINAL DECREE

Now, November 27, 1972, following argument before the court en banc and upon consideration of briefs, it is ordered and decreed that:

1. Defendant's exceptions to the adjudication in equity are dismissed.

2. The decree nisi entered on June 15, 1972, is confirmed and entered as a final decree.