GENDRON v. JACOBY.

1. ASSUMPSIT—COMMON COUNTS—OPENING STATEMENT—COMMISSIONS FOR PROCURING CONTRACTS—JUDGMENT.

Defendant in action for commissions for procurement of contracts with an agency of the Federal government for machining and supplying finished parts held, not to have been entitled to a judgment upon the pleadings at the close of plaintiff's opening statement as claimed on appeal, where recovery is sought on the common counts in assumpsit for services rendered in procurement of contracts totaling a stated sum.

2. APPEAL AND ERROR—NONJURY CASE—PREPONDERANCE OF EVIDENCE—COMMISSIONS.

Testimony in nonjury action for commissions for procuring business for defendant held, not to have clearly preponderated in favor of defendant on issue as to whether plaintiff had procured or assisted in procuring business, hence had earned commissions for which recovery was sought.

3. CONTRACTS—PERCENTAGE COMMISSIONS—PUBLIC POLICY—UNITED STATES CONTRACT.

Contract whereby defendant was to pay plaintiff a percentage commission on contracts he obtained for business was not

---

REFERENCES FOR POINTS IN HEADNOTES

[3, 4] 12 Am Jur, Contracts §§ 206, 207.
[3, 4] Validity of contract to influence administrative or executive officer or department. 46 ALR 196; 148 ALR 768.

rendered illegal by virtue of fact that contracts were made with an agency of the Federal government and an executive order required a warranty in its contracts that they be not procured "for a * * * percentage * * * fee excepting bona fide employees or bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business," trial judge found contract was not illegal and the Federal government had not penalized defendant for breach of warranty.

4. SAME—PUBLIC POLICY—UNITED STATES—PROCUREMENT OF CONTRACT.

A contract under which defendant machinist was to pay percentage fee to procurement agent for securing contracts with the Federal government was not against public policy in the absence of contemplation by the parties that political or personal influence was to be used in procuring contracts.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 8, 1953. (Docket No. 30, Calendar No. 45,660.) Decided June 8, 1953.

Assumpsit by Walter Gendron against Thomas S. Jacoby, individually and doing business as General Engineering & Design Company, for commissions earned. Judgment for plaintiff. Defendant appeals. Affirmed.

*Arthur J. Koscinski* (*Fischer & Fischer,* of counsel), for plaintiff.

*Bunin & Grandon* (*I. Goodman Cohen,* of counsel), for defendant.

BUSHNELL, J. Defendant Thomas S. Jacoby, doing business as General Engineering & Design Company, has appealed from a judgment of $8,953.06 in favor of plaintiff Walter Gendron.

Jacoby agreed in writing to pay Gendron a commission of 5% of all net invoices for the services that he "rendered in procuring contracts of machining

and supplying finished parts." It is the claim of Gendron that, after successfully soliciting contracts for Jacoby from the Detroit Tank Arsenal, totaling $179,061.20, defendant refused to pay him his full commission.

The issue as thus framed, including Gendron's claim upon the common counts in assumpsit, was submitted to the trial court sitting without a jury. The court had the advantage of a thorough examination of the interested parties. Testimony was received pertaining to the circumstances leading up to the commission agreement and Gendron's experience as well as his activities in behalf of Jacoby. Another solicitor of business for Jacoby was called as a witness for the plaintiff to show a like understanding which he had with the defendant.

Jacoby, testifying in his own behalf, admitted that he had made an investigation of Gendron's ability, experience and contacts. The following testimony is illustrative:

"*Q.* You were anxious to obtain the services of Mr. Gendron, were you not?

"*A.* I was anxious to obtain the contracts that Mr. Gendron could obtain through his knowledge of people of influence at the various departments he worked,—not his services.

"*Q.* Well now, are you testifying, Mr. Jacoby, that you were desirous of purchasing influence that Mr. Gendron had?

"*A.* Well, I wouldn't state it like that. Mr. Gendron had influence, and I don't claim he bribed anybody, or intended to; but knowing the right people could obtain a contract without any concept of wrongdoing.

"*Q.* Well then, you are stating, are you not, that you were convinced that Mr. Gendron had the experience and the know-how to obtain business for you, and you were anxious to, for that reason,—to become associated with him?

"*A.* He had not the know-how. He just had contacts, or he impressed me with the contacts he was supposed to have."

Defendant was not entitled to a judgment upon the pleadings at the conclusion of plaintiff's opening statement as argued by him on appeal; nor can it be said that in this trial by the court without a jury that the testimony clearly preponderates in defendant's favor on the proposition that plaintiff did not procure, or at least assist in procuring, business for the defendant. The trial judge properly held that plaintiff had earned the stipulated commission.

Defendant also contends that the agreement was predicated upon the use of "influence" in the solicitation of business from a governmental agency, and therefore was unenforceable because contrary to public policy. He also asserts that recovery may not be had where the contract of employment is in violation of section 5 of title 2 of executive order No 9001, "prohibiting contingent agreements for compensation."

This executive order, promulgated on December 27, 1941, and amended several times, reads in part:

"Every contract entered into pursuant to this order shall contain a warranty by the contractor in substantially the following terms:

"The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established com-

mercial or selling agencies maintained by the contractor for the purpose of securing business." 50 USCA, App, § 611.

Paragraph 20 in the contract between the defendant and the Government is quoted in the trial judge's opinion as follows:

"The contractor warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee *excepting bona fide employees or bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business.* For breach or violation of this warranty the Government shall have the right to annul this contract without liability or in its discretion to deduct from the contract price or consideration the full amount of such commission, percentage, brokerage, or contingent fee."

The trial judge, in discussing defendant's claim of illegality, described the services rendered by plaintiff and how Government contracts are obtained. He concluded his opinion with the following statement:

"The agreement, insofar as the law of Michigan is concerned, is entirely legal, and is directly in line with many other such agreements in many walks of life, which are performed. Life insurance agents do a lot of their work under such agreements. Real estate agents operate under similar circumstances. The illegality claimed rests solely and alone upon paragraph 20. As a result of paragraph 20 the defendant signed a contract containing the covenant therein set forth. That contract is a valid contract, and is not tinged with illegality. The most that can be said about it is that if the services performed by the plaintiff are those that are described in and warranted against by that paragraph, then the defendant has breached his covenant, and he may be liable

to penalty therefor.   Such penalty might take the form of annulment of the contract.   This contract was not annuled.   It was performed in full.   It might take the form of a deduction from the contract of the full amount of the commission claimed by the plaintiff.   Or, the Government may not do anything at all about it.   There is no evidence that the Government has made any such deduction.   However, if the contract was breached,—and there is a doubt in my mind that it was breached,—that does not annul the contract between the defendant and the Government.   It does not tinge that contract with illegality. It only subjects the defendant to a penalty."

In *Reinhard* v. *Grand Rapids School Equipment Co.,* 211 Mich 165, contingent commissions for obtaining war contracts were involved.· On the question of public policy this Court quoted with approval from 17 CJS, Contracts, § 215, that—

" 'This extreme doctrine (as stated in the *Norris Case*) is not generally followed, and the right of all persons to be heard before any officer or department of the Government through agents has been affirmed, and the legality of contracts for the employment of legitimate agents for the negotiating of business with the Government has been sustained where no corrupt influences were to be used by the agent, and the agency is disclosed, even though compensation is contingent on success.' "

See *Providence Tool Company* v. *Norris,* 2 Wall (69 US) 45 (17 L ed 868) ; *Crocker* v. *United States,* 240 US 74 (36 S Ct 245, 60 L ed 533).   Judgment for plaintiff was affirmed because, said the Court:

"There is no proof or claim here that the contract of hiring contemplated any illicit methods, or that any corrupt influences were used in securing Government contracts."

A commission agreement on the solicitation of bids for improvements at the State prison at Mar-

quette was approved in *Oliver Machinery Co.* v. *Grand Rapids Veneer Works,* 249 Mich 204. The Court in that case, after citing and discussing various authorities, found itself in accord with the conclusion reached by the trial court—that where no illicit method or corrupt influence was contemplated or used, the commission contract was enforceable. See, also, *Mahoney* v. *Lincoln Brick Co.,* 304 Mich 694, and *Hays* v. *City of Kalamazoo,* 316 Mich 443, 460 (169 ALR 1218).

The history and development of the law on contingent fees in the procurement of Government contracts is treated in 11 George Washington Law Review 37 (1942). The provisions of executive order No 9001 have been considered in the following cases: *Ebeling* v. *Fred J. Swaine Manfg. Co.,* 357 Mo 549 (209 SW2d 892 [1948]); *Buckley* v. *Coyne Electrical School, Inc.,* 343 Ill App 420 (99 NE2d 370 [1951]); *Reynolds* v. *Goodwin-Hill Corp.,* 154 F2d 553 (1946–CCA2); *Bradley* v. *American Radiator & Standard Sanitary Corp.,* 159 F2d 39 (1947–CCA2); *Hall* v. *Anderson,* 18 Wash2d 625 (140 P2d 266, 148 ALR 760 [1943]). See contra trend and factual distinctions in *United States* v. *Paddock,* 180 F2d 121 (1950–CCA5), and *Mitchell* v. *Flintkote Co.,* 185 F2d 1008 (1951–CCA2).

In the syllabus (209 SW2d) of the *Ebeling Case* the Court said:

"Executive Order No 9001 did not prohibit the employment of agents to procure war contracts on a percentage commission basis but merely provided that the contract should contain a warranty that the contractor would not employ other than a bona fide, established, commercial or selling agency to obtain the contracts."

In the *Buckley Case* the Court, in upholding a contingent-fee contract by a divided vote, said in its syllabus:

"A contract under which technical training school was to pay contingent fees to procurement agent for securing war contracts with Federal government for training of armed forces personnel was not against public policy in absence of contemplation by parties that political or personal influence was to be used in procuring contracts."

The Illinois court also said that the executive order did not make contingent-fee contracts void, but merely gave the Federal government an option to annul a war contract or deduct the amount of the commission when paying the contractor.

We are mindful of the strong dissenting opinion filed in the *Buckley Case,* but we prefer the view expressed by the majority. We adopt and approve the following statement by the trial judge:

"This plaintiff has no contract relations with the Government. His contract relations are with the defendant. His contract with the defendant makes no mention of any possible penalty as against the defendant, imposed by the Government, and makes no provision as against the payment of a commission if any such penalty is exacted. The Government evidently exacts this covenant in question in order to protect itself against the illegal use of improper influence in the letting of Government contracts. That is perfectly proper. There is no evidence that has any tendency at all to show any illegal use of any kind of influence whatever in this case. What the plaintiff did, so far as the evidence shows, is legitimate, and useful."

We find no reversible error. The judgment is affirmed, with costs to appellee.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.