18

## A. H. HAESELER BUILDING AND CONTRACTING COMPANY, Plaintiff-Appellee, v. JOHN J. DUPPS COMPANY, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

No. 2282.    Decided December 28, 1954.

Pickrel, Schaeffer & Ebeling, Dayton, By William H. Selva, Of Counsel, for plaintiff-appellee.

Coolidge, Becker, Wall & Wood, Dayton, By Pierce Wood, Of Counsel, for defendant-appellant.

## OPINION

**By THE COURT:**

This is an appeal from a judgment entered upon the verdict of a jury finding for the plaintiff in the sum of $25,007.60 with interest. The action was to recover money claimed to be due plaintiff by reason of its performance of an oral contract between the parties wherein it was averred that defendant agreed to pay to plaintiff a commission of ten per cent on any money received upon any contract entered into between defendant and Toprak Mahsulleri Ofisi, a commission representing the Turkish Government, which we hereinafter refer to as the Turkish Commission. The petition avers that the plaintiff, acting as defendant's agent, was instrumental in securing a contract with the Turkish Commission whereby the Commission purchased supplies of machinery from the defendant amounting to the sum of $364,831.91. It was stipulated that if any sum was due plaintiff, it was in the amount of $25,007.60

The first defense of the answer admits a promise to pay plaintiff ten per cent commission on any contract which plaintiff was instrumental in securing for the defendant from the Turkish Commission but, after setting forth certain exclusions from the amount to be paid, the answer avers that:

"Defendant promised to pay such commission only upon condition that plaintiff act as its agent in securing certain other specified contracts. Defendant says that plaintiff failed to so act. Further avers that although it admits that it entered into a contract with the Turkish Commission in the amount set out in the petition, denies that plaintiff acted as its agent in connection therewith and that plaintiff was instrumental in securing a contract for the defendant. Further avers that although it had shipped supplies and machinery pursuant to the contract the Turkish Commission has not accepted all of the equipment contracted for and that the total sum received is $296,561.70. Denies specifically that a contract ever was entered into between plaintiff and defendant."

Defendant in its brief epitomizes the second, third, and fourth affirmative defenses in its answer, as follows:

"The contract between plaintiff and defendant was contrary to public policy and void, because it contemplated the use of Settlage's personal influence upon the Turkish Government Officials.

"The ten per cent completion contract between the plaintiff and defendant being identical with the contracts between plaintiff and defendant's competitors, is void, since the acceptance of conflicting employment constituted a breach of plaintiff's duties as defendant's agent.

"Defendant's contract with the Turkish Government was subject to the Foreign Assistance Act of 1948, as amended, and with the regulations adopted thereunder. Such regulations outlaw contingent fees, except those paid to a bona fide established commercial or selling agency. Therefore, the contract to pay plaintiff a commission for obtaining the Turkish contract was illegal, contrary to public policy, and void"

All of the evidence was developed through the testimony of C H

Settlage, president of plaintiff company, and John A. Dupps, president of defendant company, and exhibits offered by the parties.

The record discloses that in 1950 (April) the Turkish Commission had come to the United States with the intention of receiving bids on machinery for packing houses to be built by the Turkish Government. Mr. Settlage, on behalf of the plaintiff, said that upon learning of the arrival of the Turkish Commission he contacted a number of American manufacturers who might be interested in submitting bids, among whom was Mr. Jack Dupps of defendant company; that he had theretofore dealt with the father of Mr. Dupps, but had not been in touch with the son; that he, by phone, talked to Dupps; explained to him the situation and asked him if he would be willing to pay a ten per cent commission to plaintiff on any contract which plaintiff was instrumental in securing for the defendant company from the Turkish Commission. It is testified that in this conversation, Settlage told Dupps that he had a similar arrangement with other prospective suppliers and bidders on the Turkish Government contract. The Turkish Commission placed their entire order for supplies, amounting to $600,000.00, with American manufacturers, the defendant receiving an order in the amount of $364,000.00.

Pursuant to the contract between the defendant and the Turkish Commission, defendant made 74 shipments of material, with each of which it forwarded a completed form known as F. C. A. 280, issued by the Economic Cooperation Administration. On the face of this form is the amount of the invoice, the nature of the shipment, the supplier's name and address, the importer's name and address and the names of agents with addresses and "Commission In Invoice Amount." On each of these forms the plaintiff was listed as the agent, and the amount of commission due was set out.

On the reverse side of the form there is what is headed "Supplier's Certificate". Among other statements therein contained, are the following:

"(1) The supplier is entitled under said contract to the payment of the claimed sum, and he will promptly make appropriate reimbursement to the Administrator in the event of his nonperformance, in whole or in part, under said contract, or for any breach by him of the terms of this certificate."

"(4) The supplier is the producer, manufacturer, processor or exporter of, or a regular dealer in the commodity, or furnishes the service covered by said contract and has not employed any person to obtain said contract under any agreement for a commission, percentage, or contingent fee, except to the extent, if any, of the payment of a commission to a bona fide established commercial or selling agent employed by the supplier as disclosed on the reverse of this form."

"(10) The supplier has filled in the applicable portions of the invoice—and—contract abstract on the reverse hereof, certifies to the correctness of the information shown therein. * * *."

These certificates were signed by John A. Dupps.

It was testified that all of the other American manufacturers with

which plaintiff had a contract, the same as entered into between the parties, paid the amounts of commission which they had agreed to pay. That defendant not paying, Mr. Dupps was contacted by phone, whereupon he stated that he did not propose to pay the commission.

Mr. Dupps, while admitting that the conversations took place with Settlage, denied that he had any information of the multiple agency contract and upon the facts appearing, claimed that any contract that was secured through the efforts of Mr. Settlage was by reason of his personal influence with the Turkish Commission, which had the authority to contract on behalf of the Turkish Government; and that the plaintiff was not, at the time the contract sued upon was entered into, a bona fide established commercial or selling agency.

The court, by special charges given at the request of the parties before argument, in connection with the general charge, covered all of the issues drawn by the pleadings.

Eleven errors are assigned, the first five of which relate to "E. C. A. Matters".

It is urged that the court erred in overruling the motion for judgment notwithstanding the verdict, since plaintiff failed to prove that it was a bona fide established commercial or selling agent as required by the E. C. A. regulations.

The trial.judge, at the request of defendant, charged the jury that the constituent elements of a bona fide established commercial agency. The record affords support for the implied findings of the jury that plaintiff was an agent such as was required by the regulations

It is urged that the court erred in allowing plaintiff to attempt to prove that it was a bona fide established commercial agent in 1950 by proof of subsequent acts of the defendant. Such acts as were referrable to the relation of the parties and as reflected upon the respective claims as to the existence or the subsistence of the oral contract were clearly competent.

It is also asserted that the court erred in refusing defendant's proffered special instructions to the effect that the E. C. A. certificates were not to be considered as evidence bearing upon plaintiff's claim to have been such bona fide established commercial agent. Manifestly, such certifications in and of themselves could not establish the plaintiff to be a bona fide established commercial agent, if in fact it had not the capacity to so act. However, the certificates were broader and more extensive than the mere statement relative to the agency status of plaintiff. We are not satisfied that the special charge requested by defendant should have been given, without qualification. Incidentally, this is the most difficult and most doubtful assignment of error presented. Of course, the certificates were probative of the bona fides of the parties, and if upon the whole evidence plaintiff was proven to have come within the exception to the warranty. then the certifications as to its status might work an estoppel against defendant. We do not extensively pursue the question of the effect of these certificates on the right of plaintiff to recover in this law suit, because the trial judge and the plaintiff concede that there was a proper issue upon the fourth defense

of the answer and the reply thereto. We consider and determine this appeal on that hypothesis. To give effect to the certificates is not in conflict with the citation of appellant in 17 O Jur 325.

Appellant cites as error the refusal of the trial judge to give its special instructions and additions to the general charge, so that the jury might be guided in respect to plaintiff's status in the four Latin-American construction projects on which it relied to show that it was a bona fide established commercial agent, and in refusing to permit cross examination of Settlage, to establish facts further showing that plaintiff was not a bona fide established commercial agent.

The defendant noted no exception to the action of the court in either of the foregoing particulars.

The field of cross-examination, which it is urged was denied appellant, was generally though not specifically explored by the permission of the court. The court denied further cross-examination because of the opinion that the testimony sought to be developed, at pages 210, 211 of the record, had been adduced earlier. Whether or not further cross-examination should have been permitted was largely a matter of discretion, which we can not hold was abused.

Errors are assigned to the overruling of defendant's motion for a new trial as related to the factual issues on the E. C. A. regulations and as to the illegality of the contracts in the other particulars challenged.

The relation of the parties and the status of defendant with respect to its multiple agency, its special influence upon the Turkish Commission to secure contracts, and particularly as to its agency as set forth in the certificates, was thoroughly explored and developed. Executive Order 9001—Title 50 U. S. C. A. App., Sec. 611, insofar as pertinent, provides:

"5. Every contract entered into pursuant to this order shall contain a warranty by the contractor in substantially the following terms:

"The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or commission the amount of such commission, percentage, brokerage, or contingent fee. This warranty shall not apply to commission payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business."

The regulations pleaded by the defendant follow very closely the terms of the Executive Order just quoted. This order, in our opinion, does not provide that a contract to pay contingent fees and commissions to other than bona fide established commercial or selling agent, is illegal and void. It does provide that the contractor make the warranty therein set forth, and that breach of the warranty shall give the Government the right to either annul the contract or, in its discretion, to deduct from the contract price or commission the amount of such commission, etc. The Government is not involved in this action, nor

does this Order authorize any other to invoke its penalty provisions. The penalty, if invoked, is against the contractor. He is not required to make such a warranty if he comes within the exception. The defendant, to conform to the order and the regulation, made the warranty 74 times that the plaintiff company was entitled to the commission payable to it by the defendant because its contract with the Turkish Government was secured through a bona fide established commercial or selling agent.

What we have said relative to the Order and Regulation is not required by this appeal. If it were, it is apparent that we would not be disposed to follow the decision in Mitchell v. Flintkote Co., 185 Fed. (2d) 1008, and other similar holdings cited by appellant. The appeal in the Mitchell case was predicated on an action instituted in a Federal Court on an oral contract wherein Mitchell sought to recover a commission on defendant's sales of camouflage paint to the United States Government. The opinion is much broader than was required by the issue presented and upon which the judgment was entered. The court held the contract to be illegal under Executive Order 9001 because the contract entered into by the defendant company with the War and Navy Departments did not, and under the facts could not, properly contain the warranty, or come within the exception. The opinion says that Executive Order 9001 flatly requires that no person be employed on contingent fees to "solicit or secure the contract." We cannot so read the language of the order. The facts in the cited case, however, and those developed here, are not parallel.

We are more favorably impressed by the cases of which Gendron v. Jacoby (Mich.) 59 N. W. (2d) 128, is typical.

That the foregoing discussion as to the effect Executive Order and Regulations pursuant thereto is not required or germane to this appeal appears by reason of the view of the law adopted by the court, as contended by appellant, given in Special Charge No. 7, as follows:

"I charge you that an agreement to pay a contingent fee to an agent for securing a contract to be paid for with funds of the Economic Cooperation Administration of the United States Government is illegal unless the person claiming the contingent fee is a bona fide established or selling agent."

The verdict in the light of Charge No. 7 is an implicit finding that the plaintiff was an agent, bringing it within the exception as to the warranty, as defined by the court in its Special Charge No. 8, given at the request of defendant before argument.

We are cited to **King v. Horton, 116 Oh St 205,** where it was developed that the contract upon which the plaintiff sought to recover arose in a bucket-shop transaction, an illegal act, as a matter of law. To like effect is Stone v. Steinan Mfg. Co., 133 N. J. L. 593, 45 Atl. (2d) 486, where there was an express finding that "the substitute agreement," the basis of the action, "was a mere blind" to cover up culpable fraud on the part of both parties as to the agreement. The basis of the judgments in the foregoing cases is not found here, in view of the submission of the legality of the transactions incident to the contract to the jury and the determination by it favorably to plaintiff.

"Error is assigned in the giving of special instructions to the effect that, notwithstanding plaintiff's original failure to disclose its multiple agency, it was defendant's duty after becoming aware of plaintiff's multiple agency to decline to enter into the contract with the Turkish Purchasing Commission."

We presume that reference is made to Special Charge No. 3, which does not say that it was the duty of defendant, after becoming aware of plaintiff's multiple agency, to decline to enter into the contract. The substance of the charge is that though defendant may not have known of the multiple agency of plaintiff when the contract was made, if it later received such information and accepted the benefits thereof, it had thereby acknowledged the agency relationship. The charge, in our judgment, states a correct principle of law applicable to the factual development. **United States Rolling Stock Co. v. Atlantic and Great Western R. R. Co.**, 34 Oh St 450; Annotation to Olson v. Pettibone, 48 A. L. R. 926; Valaske v. Wertz, In re St. Clair, et al., 106 Fed. (2d) 450, 1st Syl.; United States v. Grace Evangelical Church, 132 Fed. (2d) 460; 2 Am. Jur. 214, 223.

Error is asserted in the refusal to give special instruction requested by defendant before argument relating to the duty of disclosure of an agent accepting multiple employment.

The requested instructions relate to jobs other than the one immediately involved in the action on trial, and recited a state of facts under which the jury was required to determine that plaintiff was not on those jobs acting as a bona fide commercial agent. They did not set forth any principle of law that was material decisive of any issue. The instruction was properly refused.

Objection is urged to the refusal of the court to supplement its instructions after the general charge to the jury  The trial judge properly held that he had fully charged upon the subject matter of the instructions. No exception was noted to the general charge by defendant.

Other assignments relate to the admission of certain testimony, to the overruling of the motion for new trial because the verdict is contrary to the weight of the evidence generally, and the 11th is that the answer of the jury to Special Interrogatory No 1 was contrary to the general verdict and based on no evidence.

Without extended comment, we hold against the appellant on all these assignments. There were clear-cut, decisive issues in this case upon which the two witnesses, one for the plaintiff and one for the defendant, offered the principal probative evidence. They differed as to the material and controlling facts. The jury, as it had the right to do, accepted the version of developments as asserted by the plaintiff. The case was well tried by the court and counsel. No sufficient reason appears in any error assigned for disturbing the verdict and the judgment.

Judgment affirmed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.