## O'Hara v. J. W. Rex Co.

*Desmond J. McTighe*, for plaintiff.

*A. Benjamin Scirica*, for defendant.

DANNEHOWER, P. J., March 27, 1958.—Defendant has filed preliminary objections to plaintiff's complaint in assumpsit to recover contingent compensation for services rendered upon two alleged oral contracts in procuring contracts with the United States Government for the manufacture of shot and shell. These objections were argued before the court en banc and are now pending for decision.

The complaint alleges that J. Walter Rex, president and authorized agent of defendant corporation, which was engaged in the manufacture of shot and shell, orally engaged the services of plaintiff, who had many years of experience and know-how in handling bids and contracts with the United States Government, to secure Government contracts for the manufacture of shot and shell, that plaintiff performed such services and as a result, defendant became the successful low bidder on a certain Government contract awarded to defendant on June 21, 1951, that in April 1951, J. W. Rex orally agreed to compensate plaintiff at the rate

of $.65 per shot, or a total of $6,045, that defendant paid $1,300 on account and has refused to pay the balance.

Plaintiff further alleges that at a later date, J. W. Rex orally agreed to retain the services of plaintiff on a second and larger Government contract and orally agreed, if successful, to employ plaintiff as secretary of defendant corporation at a yearly salary of $25,000 with an expense account of $18,000 yearly, that on August 14, 1952, defendant was awarded the second contract, it being the lowest bidder, that defendant, on October 10, 1952, informed plaintiff that it would not employ him as agreed and that the fair and reasonable value of said services is $.35 per shot for 71,940 shots manufactured, or compensation on the second contract of $25,179.

Defendant's preliminary objections in the nature of an application for a more specific complaint as to the dates, terms, place of the alleged oral contracts and whether plaintiff is suing for agreed commissions or on a quantum meruit are without merit. It is sufficient to say that a careful reading of the complaint does state the dates and terms and clearly implies that the alleged oral agreements were made at defendant's principal office at Lansdale, Montgomery County. Furthermore, concerning the compensation on the second contract, the position as secretary with defendant corporation, if plaintiff fully performed his services, he may recover on a quantum meruit basis, because the compensation was not a liquidated amount. See A. L. I. Restatement of the Law of Contracts, §350.

The principal and important question in this case is raised by defendant's preliminary objection in the nature of a demurrer alleging that each oral contract is for fees and commissions made contingent upon the procurement of a contract with the United States Gov-

ernment and is, therefore, void and unenforceable because contrary to public policy and is in violation of section 5 of title 2 of executive order no. 9001, "prohibiting contingent agreements for compensation".

This executive order, promulgated on December 27, 1941, and amended several times, reads in part:

"Every contract entered into pursuant to this order shall contain a warranty by the contractor in substantially the following terms:

"The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the government the right to annul the contract or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made by bona fide established commercial or selling agencies maintained by the contractors for the purpose of securing business": 50 App. U. S. C. A. §611.

Both Federal and State courts have construed and interpreted executive order no. 9001 differently. Some courts have held that this order directs that no person be employed on contingent fee "to solicit or secure" Government contracts because it is against public policy, tends to corrupt and amounts to a sale of personal influence. Such agreements have been declared void, illegal and unenforceable, not because in particular cases improper influences were contemplated or used, but because of the general tendency to overreach the public. Among the cases cited for this interpretation are LeJohn Manufacturing Company v. Webb, 222 F. 2d 48 (1955); Mitchell v. Flintkote Company, 185 F. 2d 1008 (1951); Federal Pacific Electric Company v.

McAdams, 207 Misc. 525, 139 N. Y. Supp. 2d 418 (1955), and Kribbs v. Jackson, 387 Pa. 611 (1957).

Other courts have held such contingent agreements to solicit and secure Government contracts are not illegal and void as offensive to public policy because of the mere possibility that sinister or corrupt influence may be used in their performance. There must be proof that illegal means of corrupt practices have been employed or contemplated. They further hold that this order does not expressly provide that a contractor's agreement to pay commissions is void or voidable or unenforceable and no such provision should be read into it. Also that a violation of the executive order may create rights in the Government against the contractor, but does not render the contract void as far as agents who operate under the contract are concerned: Coyne v. Superior Incinerator Co. of Texas, 80 F. 2d 844 (1936); Hall v. Anderson, 18 Wash. 2d 625, 140 P. 2d 266; Gendon v. Jacoby, 337 Mich. 150, 59 N. W. 2d 128 (1953).

From our study of the cases, it would appear that the lower Federal courts have extended and expanded the true meaning of executive order no. 9001 to cover transactions not only between the Government and its immediate contractors, but between persons not included within its express terms. The extraordinary result is that they have given excessive authority and force to an administrative regulation or order far beyond that accorded legislation. It seems the Federal judges have tortured the language of a regulation to stamp as unlawful an act which is within normal business practice. If Congress desired to declare contingent fee contracts void and illegal, it could easily have prohibited them in no uncertain terms. Therefore, a number of State courts have rejected the decisions of the Federal courts in interpreting this executive order.

The courts of Pennsylvania have continually upheld contracts of this type, except in cases of improper conduct by the agent: Warnock v. Philadelphia Trust Company, 69 Pa. Superior Ct. 589; Hosack v. Taylor Brothers, 142 Pa. Superior Ct. 83 (1940). There is only one Pennsylvania case mentioning executive order no. 9001, and defendant relies heavliy upon that case (Kribbs v. Jackson, 387 Pa. 611 (1957)) to sustain his preliminary objection that the contract is illegal. In this case, Justice Chidsey stated on pages 624 and 625:

"The rule is established in Pennsylvania that a contract, under the terms of which one party is to receive compensation contingent upon his obtaining Government business *without disclosing to the public officers his financial interest is void. '. . .* Such a contract is plainly against public policy because of its corrupt tendency: it tends to a sale of personal influence in circumstances in which it is the duty of public officers to make the best possible appointment without regard to private interests, and in which that duty cannot properly be performed in ignorance of the contingent interests of the interceding party. Such agreements are uniformly declared invalid, not because in particular cases improper influences were contemplated or used but because of the general tendency to overreach the public.' " (Italics supplied.)

This case can be distinguished and differs on its facts from other cases construing executive order no. 9001. This was a case in equity for an accounting based on actual fraud and involved principles of agency, and could well have been decided without any discussion on Federal law or the interpretation of executive order no. 9001. It should be noted that Justice Chidsey said "without disclosing to the public officers his financial interest". There is nothing in the case before us to

show that plaintiff did not disclose his financial interest and agency to the Government officials. Defendant cannot allege or prove that plaintiff failed to disclose his financial interest until he answers. Furthermore, we agree with plaintinff that the reference to executive order no. 9001 in the Kribbs case is dictum and was not necessary to the decision. It is clear that the court based its decision upon actual fraud and agency. Being dictum, the court is not bound: Orlosky v. Haskell, 304 Pa. 57, 67 (1931).

In disposing of this important question of law preliminarily, we are in accord with reasoning expressed in the opinion of the Supreme Court in Gendron v. Jacoby, supra, where Justice Bushnell stated, at page 154:

" 'The agreement, insofar as the law of Michigan is concerned, is entirely legal, and is directly in line with many other such agreements in many walks of life, which are performed. Life insurance agents do a lot of their work under such agreements. Real estate agents operate under similar circumstances. The illegality claimed rests solely and alone upon paragraph 20. As a result of paragraph 20 the defendant signed a contract containing the covenant therein set forth. That contract is a valid contract, and is not tinged with illegality. The most that can be said about it is that if the services performed by the plaintiff are those that are described in and warranted against by that paragraph, then the defendant has breached his covenant, and he may be liable to penalty therefor. Such penalty might take the form of annulment of the contract. This contract was not annuled. It was performed in full. It might take the form of a deduction from the contract of the full amount of the commission claimed by the plaintiff. Or, the government may not do anything at all about it. There is no evidence that the Government has made any such deduction. However, if the contract

was breached, and there is a doubt in my mind that it was breached, that does not annul the contract between the defendant and the Government. It does not tinge that contract with illegality. It only subjects the defendant to a penalty.' . . .

"On the question of public policy this Court quoted with approval from 17 C. J. S., Contracts, §215, that

" 'This extreme doctrine (as stated in the Norris case) [2 Wall. U. S. 45, 17 L. Ed. 868] is not generally followed, and the right of all persons to be heard before an officer or department of the government through agents has been affirmed, and the legality of contracts for the employment of legitimate agents for the negotiating business with the government has been sustained, where no corrupt influences were to be used by the agent, and the agency is disclosed, even though compensation is contingent on success.' . . .

" 'Executive Order No. 9001 did not prohibit the employment of agents to procure war contracts on a percentage commission basis but merely provided that the contract should contain a warranty that the contractor would not employ other than a bona fide, established, commercial or selling agency to obtain the contracts.' . . .

"We adopt and approve the following statement by the trial Judge:

" 'This plaintiff has no contract relations with the Government. His contract relations are with the defendant. His contract with the defendant makes no mention of any possible penalty as against the defendant, imposed by the Government, and makes no provision as against the payment of a commission if any such penalty is exacted. The Government evidently exacts this covenant in question in order to protect itself against the illegal use of improper influence in the letting of Government contracts. That is perfectly

proper. There is no evidence that has any tendency at all to show any illegal use of any kind of influence whatever in this case. What the plaintiff did, so far as the evidence shows, is legitimate and useful.' "

In the case before us, the complaint discloses that plaintiff, an expert in making and handling bids and contracts with the Government, performed valuable services for defendant resulting in the award of two substantial Government contracts. These contracts have been performed, the Government has not exacted any penalty under executive order no. 9001 and defendant has been paid. Plaintiff alleges that he has performed valuable services for defendant and, while receiving $1,300 on account, has not received the full promised compensation. There is no allegation of impropriety, illegal means or corrupt practices on plaintiff's part in his dealings with the Government officials. Furthermore, the contracts were open to competitive bidding and were awarded to defendant, who was the lowest bidder. Admittedly, the Government had a right to annul the contract or deduct the amount of plaintiff's commissions but this was not done. Apparently this was not an "influence peddling" type of situation, and the interest of the Government was not harmed or prejudiced in any respect. We feel that it would not be honorable or honest to allow defendant to avoid an alleged contractual obligation and retain all the benefits of plaintiff's services in this situation which is not concerned with the evil and corrupt practices which executive order no. 9001 was designed to eliminate.

### Order

And now, March 27, 1958, for the foregoing reasons, all of defendant's preliminary objections are overruled and dismissed and defendant shall have the right to plead over within 30 days from this date.