## Wilkinson *v.* McCullough.

*Principal and agent—Real estate broker—Commissions.*

A real estate broker employed to find a purchaser for land is bound to disclose to his principal any facts known to him, material to the transaction; and if he takes part in the negotiation he is bound to exert his skill for the benefit of his principal.

A real estate broker who conceals from his principal the name of the purchaser whom he has procured, and the fact that such purchaser had bought an adjoining lot, and does this for the avowed purpose of preventing the principal from raising the price, is not entitled to commissions.

Submitted Nov. 6, 1899. Appeal, No. 85, Oct. T., 1899, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1897, No. 689, on verdict for plaintiff, in case of James W. Wilkinson v. Louisa C. McCullough. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Reversed.

Assumpsit by real estate broker for commissions.

The facts appear by the opinion of the Supreme Court.

The court refused to give binding instructions for defendant and submitted the case to the jury.

Verdict and judgment for plaintiff for $1,094. Defendant appealed.

*Error assigned* was in refusing to give binding instructions for defendant.

*Frank C. Osburn*, with him *John C. McCombs*, for appellant.— The relation existing between a real estate agent and his principal is a confidential or trust relationship; the services of a real estate agent are due solely and entirely to the party who employs him, and an agent who undertakes to act for both parties cannot recover pay from either: Dunlop v. Richards, 2 E. D. Smith (N. Y. Common Pleas), 181; Farnsworth v. Hemmer, 83 Mass. 494; Reid v. Stanley, 6 W. & S. 369; Persch v. Quiggle, 57 Pa. 247; Young v. Hughes, 32 N. J. Eq. 372; Hesse v. Briant, 6 De G. M. & G. 623.

An agent who withholds or conceals the name of the real pro-

posed purchaser from his principal cannot recover any commissions from the latter: Pratt v. Patterson, 112 Pa. 475.

*Willis F. McCook*, for appellee.

PER CURIAM, May 30, 1900:

This action of assumpsit was brought to recover commissions on a sale alleged to have been made by the plaintiff of real estate belonging to the defendant.

On the trial the court was requested to instruct the jury, inter alia, '' That under all the evidence their verdict should be for the defendant.'' This instruction was refused and the case was submitted to the jury mainly on the proposition contended for by the plaintiff, that acting as defendant's agent for the sale of the property in question, he had procured and presented to her a purchaser who was able, ready and willing to buy the property at the price previously named by her, viz: $50,000, but she refused to sign the contract of sale, and shortly afterwards sold the property to another person at an advance of about twenty per cent on that sum. In thus refusing to charge as requested, defendant contends that the learned trial judge erred in not giving proper effect to part of plaintiff's evidence which was properly before the court. In this we think she is correct.

It appears to us that the controlling question raised by the plaintiff's own evidence was, Whether he acted with that good faith towards his principal, which the law requires, and without which no claim to commissions can be sustained.

The history of the transaction as testified to by the plaintiff himself, is briefly as follows: Defendant was the owner of a lot on the corner of Liberty street and Cecil alley, Pittsburg. The buildings on the lot having been destroyed by fire, the defendant offered it for sale. About that time plaintiff had a conversation with T. C. Jenkins, a flour merchant, in which the latter said, " He would buy the Gormeley and McCullough properties, which adjoined each other provided he could get them at a fair price. He did not want to appear personally in the matter, and he told his manager and his attorney Mr. James A. McKean, to attend to the matter." Plaintiff succeeded in buying the Gormeley property for Jenkins and as to defendant's

property adjoining, he testified that Jenkins instructed his manager and his attorney "to have me buy the property for him." On cross-examination he testified: "I had been instructed by them to buy the property if I could get it at a fair price." Defendant's asking price for her property was $50,000, although plaintiff testified that she said to him, "I want you to go ahead and get the best bid that you can." He further testified: "We used our best endeavors to get the price for her and we made her bids of $43,000, $44,000 and $45,000, for the property." These offers were all refused by the defendant. Finally, on July 1, 1897, plaintiff presented to defendant James A. McKean as the purchaser, and a contract of sale for $50,000 was drawn up in his name for defendant's signature. At her request the meeting was adjoined to N. Holmes and Son's Bank, that she might have the benefit of Mr. Holmes's advice. Various matters relating to the sale were there discussed, and among other things, defendant asked, "who the property would finally go to." This the plaintiff refused to disclose. In his own language, they "wouldn't tell her that until she signed the paper, because she would jump the price on us." In other words, as expressed by plaintiff, if defendant learned that Mr. Jenkins was the real purchaser she would understand his need for her corner lot and would raise the price accordingly. The defendant, in the end, failed to sign the contract of sale, and finally broke off all negotiations with the plaintiff. In September following, without the intervention of an agent, defendant sold the property to T. C. Jenkins for $60,000 or $62,000.

Many other extracts from plaintiff's testimony might be given as to declarations made by him and a course of conduct on his part, utterly at variance with his relation as agent for the defendant, but in the view we take of the case, it is unnecessary. It is conclusively established by plaintiff's own testimony that he failed to furnish defendant all the information to which she was justly entitled including the important facts that Jenkins was the real purchaser and that he had already purchased the adjoining property. He does not pretend that this occurred by any oversight. His own testimony is emphatic that in answer to defendant's request he positively refused to give her the name of the real purchaser; and the reason he assigned for his refusal to do so is in perfect harmony with that part of his

testimony wherein he said: "I had been instructed by them (Jenkin's manager and attorney) to buy the property if I could get it at a fair price;" "I wouldn't tell her that" (who the property would finally go to) "until she signed the paper, because she would jump the price on us," etc. The plaintiff's conduct in the premises, as testified to by himself on the witness stand, convicts him of bad faith towards the defendant.

The application of sound principles of law to the conclusively established facts of the case is quite plain. The general principle is that out of consideration for the weakness of human nature, the law will not permit real estate brokers and others occupying fiduciary relations to place themselves in a position where they are open to the claims of conflicting duties, or to the claims of duty conflicting with self-interest. The principle is variously expressed according to the varying circumstances which call for its application: a trustee may not purchase at his own sale, etc., and as in the present case, one may not be agent for or serve the interests of both buyer and seller: Young v. Hughes et al., 32 N. J. Eq. 372; Farnsworth v. Hammer, 83 Mass. 494. In the latter case it was held that a broker who had acted for both parties in negotiating an exchange of real estate between them, without informing either that he was employed by the other, is not legally entitled to commissions for his services, etc.

In the former case it was held that a real estate broker employed to find a purchaser for land is bound to disclose to his principal any facts known to him, material to the transaction; and if he takes part in the negotiation, he is bound to exert his skill for the benefit of his principal.

In Rice v. Davis, 136 Pa. 439, this court held that where a broker employed to sell shares of stock for his principal, received with knowledge of the latter a compensation from the purchasers, he could not recover commissions for the sale. It was there said at page 442, "The principle underlying this case that an agent for the sale of property cannot at the same time act as agent for the purchase thereof, or interest himself therein, and thus entitle himself to compensation from both vendor and vendee, is grounded on the infallible declaration that 'no man can serve two masters.'"

In commenting on the relation of real estate brokers to their

principals, it was said, in Rich v. Black et al., 173 Pa. 92, 99, that " the relation which such agents bear is confidential and disarms the vigilance of their principals; it affords peculiar facilities for obtaining exclusive information in respect of the property entrusted to them for sale; their employment implies that they have superior advantages for making sales and that they will use every effort and means to obtain the highest price for the benefit of their principal." See also Addison v. Wanamaker, 185 Pa. 536.

In the leading case of Everhart v. Searle, 71 Pa. 256, the decision is rested on the ground of public policy. Quoting from Hare and Wallace's Leading Cases in Equity, it is there said, " It matters not that there was no fraud meditated and no injury done, the rule is not intended to be remedial of actual wrong, but preventative of the possibility of it."

In Pratt v. Patterson, 112 Pa. 475, it appeared on the trial by plaintiff's own testimony that the party presented to the defendant as the proposed purchaser was not the real purchaser, and the court entered a compulsory nonsuit. In affirming that judgment this court said: " Good faith forbade the concealment of an arrangement intended for the advantage of the buyer rather than of the seller." That case virtually rules the one before us.

In Cannell v. Smith, 142 Pa. 25, commissions were recovered back from a broker on proof that he had acted as the agent of the purchaser.

It is unnecessary to multiply authorities, or comment further on the underlying principle. Enough has been said to show that under the law and the facts established by the plaintiff's own evidence he was not entitled to recover the commissions claimed by him, and defendant's first point should have been affirmed.

Judgment reversed.