Kribbs *v.* Jackson (et al., Appellant).

Argued October 5, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY and ARNOLD, JJ.

*John A. Metz, Jr.*, with him *Edwin M. Wallover*, and *Metz, McClure & MacAlister*, for appellant.

*Leonard L. Ewing,* and *T. Bradshaw,* with them *George W. Lucas, Reed, Ewing & Ray,* and *Bradshaw & Panner,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 7, 1957:

This is an equity action brought in Beaver County in which plaintiff Kribbs, averring, inter alia, in his complaint that the defendants Jackson and Solomon had fraudulently misappropriated monies of the plaintiff, sought an accounting by, and recovery from both defendants. The defendants filed separate answers. Solomon's answer included a counterclaim to which plaintiff filed an answer. The case was heard by President Judge ANDERSON of the Orphans' Court of Washington County, specially presiding as chancellor, who entered a decree nisi in favor of the plaintiff and against both defendants and dismissed Solomon's counterclaim which was founded on the same transaction. No exceptions thereto were filed by defendant Jackson and judgment was thereafter duly entered against him from which no appeal was taken. Exceptions filed by the defendant Solomon were heard by the court en banc consisting of the chancellor and President Judge SHUMAKER of Butler County, also specially presiding. The exceptions were dismissed and the decree nisi affirmed. This appeal by Solomon followed.

The facts as found by the chancellor may be summarized as follows: On June 1, 1951, the plaintiff Kribbs, who was retired and resided in Florida, was the owner of a two-story business property located in Beaver Falls, Pennsylvania. Defendant Jackson, who is a justice of the peace in Beaver County, was in the real estate business and acted as the agent of Kribbs to collect the rents from the property and remit them to Kribbs in Florida. The rent received from the tenant

occupying the Kribbs property for some time prior to June 1, 1951, was $275 per month which defendant Jackson regularly remitted to Kribbs in Florida less a commission of 5 per cent of the gross rental. On or about June 1, 1951, the tenant occupying the Kribbs property moved, the property became vacant, and Jackson sought a new tenant.

Defendant Solomon, a lawyer and member of the Bar of Beaver County, was one of the owners of another business property in Beaver Falls which had been occupied for some years by the Reserve Corps of the United States Army under lease by the United States of America, hereinafter referred to as the Government. Solomon was a member of the Reserve Corps. The Government's lease expired June 30, 1951 and Solomon had given notice that he wanted possession at that time in order to rent the property to another tenant. Solomon learned that the Government was looking for another property in Beaver County to rent and learned that it was considering a certain property in Beaver Falls known as the Gary property at a rental of $650 per month.

In the early part of June, 1951, after the Kribbs property had become vacant and after Solomon had notified the Government to vacate his property on the expiration of its lease, Solomon approached Jackson and told him he could produce a good tenant for the Kribbs property at a rental of not less than $500 a month if he were paid $100 per month for the life of the lease. Solomon stated that his prospect was considering the Kribbs property and another property and led Jackson to believe he controlled the choice as between these properties. The tenant Solomon had in mind was the Government although he did not at that time divulge the identity of his prospect to Jackson.

Jackson subsequently accepted the proposition and a written agreement prepared by Solomon was entered into between Jackson as agent for Kribbs, and Solomon, whereby Solomon agreed to furnish "legal counsel and services" to Kribbs in obtaining a responsible tenant for the Kribbs property at a rent of not less than $500 per month, Kribbs to furnish adequate heat, light (not to exceed $15 a month), water and janitor service. It further provided that Kribbs was to pay Solomon $100 monthly during the term of the lease "and all extensions, renewals or releasings thereof". Jackson had no authority from Kribbs to enter into this agreement and Kribbs had neither notice nor knowledge of it until nearly three years later. The chancellor made no finding that Solomon actually knew that Jackson was without authority to enter into this agreement, but did find that Solomon made no attempt to learn the scope of Jackson's authority as Kribbs' agent.

After the execution of the written agreement, Solomon contacted a Government representative with whom he was acquainted, advised the latter of the availability of the Kribbs property and pointed out its fitness for the Government's requirements. Solomon never disclosed to the Government that he had any financial interest in the leasing of the Kribbs property. A written lease approved by Solomon was subsequently entered into between the Government and Jackson as Kribbs' agent whereby the Government leased the Kribbs property at a rental of $550 per month, Kribbs to furnish heat, light, water and janitor services. Both Solomon and Jackson were aware, when the lease was executed that it contained the following paragraph: "14. The Lessor warrants that he has not employed any person to solicit or secure this lease upon any agree-

ment for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the lease, or in its discretion, to deduct from the rental the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by lessors upon contracts or leases secured or made through bona fide established commercial or selling agencies maintained by the Lessor for the purpose of securing business.". There was no direct evidence that Solomon was instrumental in procuring the Government as a tenant for the Kribbs property other than indicating its availability and suitability or that he attempted improperly to influence the Government representatives in any way. The Government agents denied that Solomon influenced them to take the Kribbs property. The Government took possession of the Kribbs premises under the lease and has continued in possession.

Jackson collected the rent of $550 per month, but remitted to Kribbs only $275 per month less his agent's commission of 5 per cent which was the same amount he sent to Kribbs when the property was occupied by the previous tenant. From the balance of the rental in his hands, Jackson paid for the janitor services and the utility bills, paid Solomon $100 per month, and retained the remaining rent money for himself. Jackson purposely failed to inform Kribbs that the gross rental under the Government lease was $550 per month, and that he had agreed to pay Solomon $100 monthly from this amount. Jackson continued to withhold this information from Kribbs for more than thirty months when Kribbs found out about it and filed this bill in equity against Jackson and Solomon for an accounting.

The chancellor determined that Jackson had improperly paid to Solomon the sum of $2,993.42 from the rentals received from the Government, and that Jackson had improperly retained $2,615.35. These amounts are not disputed. The decree nisi, adopted as the final decree, ordered Solomon to account to the plaintiff for the sum of $2,993.42, and Jackson to account to the plaintiff for the sum of $5,608.77 against which he should be credited with such sum as should be paid direct to the plaintiff by Solomon, and that Jackson be subrogated to the claim of the plaintiff against Solomon for any portion of the $2,993.42 that Jackson was required to pay plaintiff by virtue of the decree. The decree was based on the chancellor's conclusions of law, which in sum held that both defendants had perpetrated a fraud on the plaintiff. The appellant, Solomon, while accepting completely the findings of fact made by the chancellor as summarized above, contends that they do not support the conclusion that he was guilty of fraud, and that the decree is erroneous to the extent that it coordinates the judgment directed to be entered against Solomon for $2,993.42 with the judgment directed to be entered against Jackson for $5,608.77.

There can be no doubt that Jackson was guilty of fraud and that he was personally liable to Kribbs for the entire amount fraudulently withheld from him. An agent owes a duty of loyalty to his principal, it is his duty in all dealings affecting the subject matter of his agency, to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal: *Allegheny By-Product Coke Co. v. J. H. Hillman & Sons Co.*, 275 Pa. 191, 118 A. 900; *Chalupiak v. Stahlman*, 368 Pa. 83, 90, 81 A. 2d 577; Restatement, Agency, §387. An agent who makes a

profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal: *Johnson, to use of McCarter v. Nippert (No. 1)*, 294 Pa. 464, 144 A. 404; Restatement, Agency, §388. As said in Mechem on Agency, Section 469, quoted in *Graham v. Cummings,* 208 Pa. 516, 533, 57 A. 943: ". . . 'All profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent. If his duty be strictly performed, the resulting profit accrues to the principal as the legitimate consequence of the relation; if profit accrues from his violation of duty, that likewise belongs to the principal, not only because the principal has to assume the responsibility of the transaction, but also because the agent cannot be permitted to derive advantage from his own default . . .' ".

It is also the duty of the agent to give to his principal all information relating to the subject matter of his agency coming to the knowledge of the agent while acting as such: *Wilkinson v. McCullough,* 196 Pa. 205, 46 A. 357; *Schaeffer v. Jones et al.,* 293 Pa. 529, 143 A. 197; *Raisch et al. v. Cook,* 306 Pa. 208, 159 A. 170; Restatement, Agency, §381. Jackson, by deliberately concealing from his principal the amount of rent the Government agreed to pay under the lease, by intentionally failing to disclose to Kribbs his contract with Solomon, and by refusing to remit to Kribbs all receipts less proper deductions, was, as the court below found, plainly guilty of actionable fraud and in violation of his duties as a fiduciary. Therefore he is liable to his principal, not only for the secret profit realized from the transaction, but he is also liable to account

to Kribbs for the money which he fraudulently and without authority gave to Solomon: *Allegheny By-Product Coke Co. v. J. H. Hillman & Sons Co.*, supra; Restatement, Agency, §§402(1)(e), 403; Mechem, Outlines on the Law of Agency, §533.

We turn to consideration of the duties, rights and liabilities of Solomon. Attorneys are specifically exempted from the requirements of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, 63 PS §431 et seq., as amended, and therefore Solomon had a right, as an incident of his legal profession, to engage in the leasing of real estate and could enter into a *proper* agreement concerning his fees for such services. Cf. *Young v. Department of Pub. Inst.*, 105 Pa. Superior Ct. 153, 160 A. 151.

Counsel for Solomon admitted in his brief and oral argument that because Jackson was not authorized by his principal to make the contract with him, he, Solomon, is liable to Kribbs for the money of Kribbs wrongfully paid to him by Jackson. However, he contends the court's holding that Solomon was guilty of fraud was not only unjustified but unnecessary to the decree which was made. It is specifically contended that the court erred in its conclusions of law that Solomon had no legal right to assume that Jackson had the power to bind his principal to the contract; that it was Solomon's duty to inform himself of the scope of Jackson's authority; that it was as much Solomon's duty as Jackson's to inform Kribbs of the contract they had made between them; that the conduct of Solomon and Jackson in approving and permitting Kribbs, in ignorance of such fact, to execute through Jackson, the Government lease containing the warranty in paragraph 14 thereof, was a violation of their respective obligations to Kribbs and was a fraudulent act as to him; and that

the plaintiff under all the evidence established fraud, substantially as charged as to both defendants. Contrary to appellant's contention, we find all of these conclusions of law fully justified.

It may be true that under ordinary circumstances and absent the factors here present, a third person entering into a contract with an agent who ostensibly acts for a disclosed principal but who in reality has no such authority, owes no duty to the principal to inform himself of the scope of the agent's authority and inform the principal of the terms of the contract made with the agent. But here the third person, Solomon, was purportedly acting as Kribbs' attorney and under the contract received approximately 20 per cent of the rental payable to his client. The Government's representatives testified that Solomon did not influence them to lease the Kribbs property. Assuming the contrary or that he was to some extent instrumental in securing the Government as a tenant, the compensation of $100 a month out of the rental for the term of the lease and any extensions and renewals thereof, if not unconscionable, was at least in such large amount as to require disclosal to and approval by his client, especially since Solomon alone fixed it. Solomon's cardinal loyalty when he undertook to represent Kribbs was to his client to whom he owed absolute candor, unswerving fidelity and undivided allegiance. As said in *Martin's Petition*, 237 Pa. 159, 160, 161, 85 A. 88: ". . . That relation [attorney and client] is so confidential in its nature that it calls for the exercise of the most perfect good faith. In transactions between counsel and client, no shadow of anything like deception or unfair dealing upon the part of an attorney, can be countenanced. In every case in which complaint is made, the courts will scrutinize the transaction with

jealous care to see that there is no relaxation of the rule. Owing to the confidence bestowed upon him, the attorney is presumed to be able to strongly influence his client, 'Hence, the law often declares transactions between them void, which between other persons would be unobjectionable. Unless the transaction is fair and conscionable, it is deemed a constructive fraud:' Shoemaker v. Stiles, 102 Pa. 549. . . .".

We fully agree with the court below that Solomon's failure to inform his client Kribbs that the warranty contained in paragraph 14 of the lease exposed Kribbs to penalty of cancellation of the lease or loss of rental to the extent of the amount received by Solomon, was a fraudulent act as to Kribbs. The undisclosed tenant that Solomon had in mind at the time he entered into the contract with Jackson was the Government and his fee was contingent on his success in this regard. Appellant knew that the Government lease contained the provision in paragraph 14 that the lessor warranted that he had not employed any person to solicit or secure the lease "upon any agreement for a commission, percentage, brokerage, or contingent fee". Appellant admits in his brief that paragraph 14 of the Government lease was required by Executive Order No. 9001.[1] He was engaging in a single transaction to procure a specific contract, and obviously did not come within the provision of the warranty excepting "bona fide established commercial and selling agencies maintained by the Lessor". By approving the lease he committed Kribbs to a false warranty. Appellant states in his brief that because this warranty could not be removed from the lease because of the Executive Order out of

---

[1] 6 Fed. Reg. 6787, 50 USCA, Appendix, §611 note and 4(a) of the Armed Services Procurement Act, 41 USCA, §153(a).

the Office of the President of the United States, "it was either a question of the lease with that [warranty] clause in it or no lease at all to the Government". To this appellant should have added "and no compensation for him". It is contended that since the Government remains in the leased premises and has taken no adverse action under the warranty that Kribbs has not been hurt and therefore his false representation to the Government does not constitute fraud. In answer it may be said that Kribbs was actually damaged by the false representation of Solomon since Kribbs did not receive $2,993.42 of rental to which he was entitled had the warranty been true. Moreover, while harm or damage must generally be established to maintain an action for fraud, and it may be that potential rather than actual damage is insufficient to constitute *actionable fraud* (Cf. *Johnson, to use of McCarter v. Nippert (No. 1),* 294 Pa. 464, 473, 144 A. 404), the false representation made by Solomon was a necessary step in securing the fruits of his contract with Jackson, the execution of which was a fraud perpetrated upon Kribbs to the latter's actual damage. It was part and parcel of the whole fraudulent scheme, as we read the record, and was properly characterized by the chancellor as an act of fraud as to Kribbs.

Appellant maintains that the decree is wrong because it places the ultimate responsibility for the payment of the $2,993.42 on him, whereas under principles of agency law, Jackson is personally liable to Solomon on the contract which he made with Solomon ostensibly as the agent of Kribbs. Appellant relies on the rule that a person who purports to make a contract on behalf of a principal whom he has no power to bind thereby becomes subject to liability to the other party thereto upon an implied warranty of authority. This gen-

624

eral rule is, of course, well settled.[2]  However, not only was the contract here involved between Jackson and Solomon fraudulent but it was illegal from its inception, and void as against public policy.  In *LeJohn Manufacturing Company v. Dwight Webb, Jr.*, 222 F. 2d 48 (C.A.D.C.), an agent brought an action against a contractor to recover commissions under a contingent fee contract based on sales to the United States Government.  The contractor's defense was that the contract was illegal under Executive Order No. 9001.  In holding that the contingent fee contract was unenforceable, the Court said, at p. 50: " 'Contingency fee contracts to secure Government business for the employer of the recipient [of the fee] have been held invalid because of their tendency to induce improper solicitation of public officers and the exercise of political pressure.'  Muschany v. United States, 1945, 324 U. S. 49, 64, 65 S. Ct. 442, 450, 89 L. Ed. 744.  This traditional policy of the courts was reinforced by Executive Order No. 9001, . . . The purpose of this requirement of the Executive Order is plain: it reflects the public policy, long enunciated by the courts, and adds to it a thrust comparable to that of statutory law.  See Mitchell v. Flintkote Co., 2 Cir., 1951, 185 F. 2d 1008.  A compensation contract in violation of the required warranty will not be enforced by the courts.".  The rule is established in Pennsylvania that a contract, under the terms of which one party is to receive compensation contingent upon his obtaining Government business without disclosing to the public officers his financial interest is void.  ". . . Such a contract is plainly against

---

[2] Restatement, Agency, §329; *Kroeger .v. Pitcairn*, 101 Pa. 311; *Hopkins et al. v. Everly*, 150 Pa. 117, 24 A. 624; *Stiteler v. Ditzenberger*, 45 Pa. Superior Ct. 266; *Stein v. McGinley et al.*, 123 Pa. Superior Ct. 122, 186 A. 231.

public policy because of its corrupt tendency: it tends to a sale of personal influence in circumstances in which it is the duty of public officers to make the best possible appointment without regard to private interests, and in which that duty cannot properly be performed in ignorance of the contingent interests of the interceding party. Such agreements are uniformly declared invalid, not because in particular cases improper influences were contemplated or used, but because of the general tendency to overreach the public. See Kuhn v. Buhl, 251 Pa. 348, 96 A. 977, and cases referred to on page 370 et seq.; . . .": *Crooks's Estate,* 316 Pa. 285, 286, 287, 175 A. 410. See also *Borden v. Ellis,* 158 Pa. Superior Ct. 259, 44 A. 2d 530; *Bruno v. Cara,* 116 Pa. Superior Ct. 544, 176 A. 863. It is clear, therefore, that the contract between Jackson as agent for Kribbs, and Solomon, being unenforceable because of illegality, could not be enforced by Solomon against Jackson even though Jackson had authority from his principal to enter into it.

As above indicated, in appellant's brief it is also contended that however the transaction is viewed, the decree of the court entering judgment against Solomon for the $2,993.42 received by him from Jackson should have contained the "proviso" that execution should not issue on that judgment against him "until there has first been a failure of execution in favor of Kribbs against Jackson on the judgment [of $5,608.77 against Jackson] . . . and then only to the extent of the failure of that execution to liquidate in full the judgment". Obviously if Jackson paid or satisfied the full amount of the judgment against him, he would have no redress against Solomon because the contract between the two, being illegal and void, any alleged rights arising thereout or founded thereon, are unenforceable by either If

appellant's contention were adopted it would be possible for Solomon to retain the rental monies unlawfully received by him, and thus profit by a fraudulent transaction which he conceived and initiated.

If the only issue before the court had been the rights of Solomon and Jackson under the contract between them, because of its illegality equity would have left the parties thereto where it found them. But the court also had before it as a party concerned, Kribbs, the innocent victim of the machinations of the other parties to the suit, and his rights were paramount. As to Kribbs, Solomon, who instigated the fraud, was in no position to claim that Jackson was primarily liable and he, Solomon, only secondarily liable, and thus place the burden upon Kribbs to first pursue Jackson to the point of insolvency before proceeding against Solomon. Jackson does not appeal from the decree as it affects him and the judgment entered thereon, and certainly Solomon cannot complain of the decree which limits his liability to the amount of the rentals received by him. Appellant suggests that Kribbs could have sued him in assumpsit for money had and received. But Kribbs could elect, as he did, to sue by an action in equity, and such course, in addition to enabling Kribbs to obtain an accounting and recovery of the monies due him from both defendants, served, by bringing to light all aspects of the transaction, to satisfy, perforce belatedly, the warranty in the lease that no one was unlawfully sharing the rental, and to absolve him as lessor of any fraud on the Government of the United States.

As to appellant's contention that it was unnecessary for the court to find him guilty of fraud, we are of the opinion that such finding was required to do

complete justice between all of the parties. Moreover, in the court below appellant did not concede as he has in this Court on appeal, that he was liable to Kribbs without proof of fraud. In his counterclaim in the present proceeding, he sought a decree requiring Kribbs to pay to him under the contract here involved, $100 a month from the time that payments were terminated by Kribbs in January of 1954 until the expiration of the Government's lease and any renewals thereof. Plaintiff's complaint charged fraud, and it was quite within the province of the court to base its decision on such ground. It may be added that the learned judges specially presiding would not have found appellant guilty of fraud gratuitously.

Decree affirmed, costs to be paid by appellant.