Brenda DiCICCO, Plaintiff,

v.

WILLOW GROVE BANK; Fred Marcel; Thomas Fewer; and, Kevin O'Donnell, Defendants.

Willow Grove Bank, Counterclaim Plaintiff,

v.

Brenda Dicicco; and, 1750 Woodhaven Drive, L.P., Counterclaim Defendants.

1750 Woodhaven Road, L.P., Counterclaim Plaintiff,

v.

Willow Grove Bank, Counterclaim Defendant.

CIVIL ACTION NO. 02–7855.

United States District Court, E.D. Pennsylvania.

March 19, 2004.

David Smith, Jonathan S. Liss, Nicole Reimann, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, for Plaintiff.

Andrew O. Schiff, Paula J. Zimmerman, Klehr Harrison Harvey Branzburg & Ellers, LLP, Frank J. Conley, Littler Mendelson, P.C., Gino J. Benedetti, Tamara L. Traynor, Miller, Alfano & Raspanti, P.C., Philadelphia, PA, for Defendant.

## *ORDER AND MEMORANDUM ORDER*

DuBOIS, District Judge.

**AND NOW,** this 19th day of March, 2004, upon consideration of Plaintiff's Motion for Leave to File a Third Amended Complaint (Document No. 32, filed July 15, 2003), Defendant Kevin O'Donnell's Motion in Opposition to Brenda DiCicco's Motion for Leave to File a Third Amended Complaint (Document No. 38, filed August 14, 2003), and the related submission of plaintiff Brenda DiCicco,[1] and Defendant Kevin O'Donnell's Motion to Dismiss 1750 Woodhaven Drive, L.P.'s Counterclaims with Prejudice (Document No. 37, filed August 14, 2003), and the related submissions of the parties,[2] **IT IS ORDERED** that Plaintiff's Motion for Leave to File a Third Amended Complaint (Document No. 32) is **GRANTED.** Kevin O'Donnell's Motion in Opposition to Brenda DiCicco's Motion for Leave to File a Third Amended Complaint (Document No. 38), treated by the Court as a response to Plaintiff's Motion for Leave to File a Third Amended Complaint, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Kevin O'Donnell's Motion to Dismiss 1750 Woodhaven Drive, L.P.'s Counterclaims (Document No. 37) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Defendant Kevin O'Donnell's Motion to Dismiss 1750 Woodhaven Drive, L.P.'s Counterclaims for breach of the loan agreement and breach of oral contract is **DENIED.**

(2) Defendant Kevin O'Donnell's Motion to Dismiss 1750 Woodhaven Drive, L.P.'s Counterclaims for fraud, negligent misrepresentation, breach of fiduciary duty and negligence is **GRANTED.**

(3) Defendant Kevin O'Donnell's Motion to Dismiss 1750 Woodhaven Drive, L.P.'s Counterclaims is **DENIED** in all other respects.

## *MEMORANDUM*

### I. FACTS AND PROCEDURAL HISTORY

This consolidated action arises out of a series of loan transactions between plain-

---

1. Reply Memorandum of Law in Further Support of Plaintiff's Motion for Leave to File a Third Amended Complaint (Document No. 41, filed September 8, 2003)

2. Memorandum of Law in Opposition to Kevin O'Donnell's Motion to Dismiss Counterclaim by 1750 Woodhaven Drive, L.P. (Document No. 44, filed September 11, 2003)

tiff Brenda DiCicco ("DiCicco") and defendant Willow Grove Bank ("Willow Grove"). The parties include: DiCicco; Willow Grove; Kevin O'Donnell ("O'Donnell"), Vice President of Commercial Loans at Willow Grove Bank; Fred Marcel ("Marcel"), President and Director of Willow Grove Bank; Thomas Fewer ("Fewer"), Senior Vice President at Willow Grove Bank; and 1750 Woodhaven Road, L.P., a business wholly owned by DiCicco.

The following facts are set forth in the pleadings at issue in the pending motions:

In the fall of 1999, DiCicco met with O'Donnell about securing a $5,000,000 credit line for her business, ATS Products Corporation ("ATS"). ATS is in the business of catalog sales of automobile and travel related products. On January 10, 2000, ATS executed a Loan, Security and Suretyship Agreement ("loan agreement") for the $5,000,000 loan. DiCicco signed the loan agreement as an individual surety, and 1750 Woodhaven Drive, L.P. ("Woodhaven") signed as a corporate surety. Woodhaven's sole corporate purpose was to acquire, own, and operate a property located in Bensalem, Pennsylvania to serve as ATS's corporate headquarters.

In or around June 2000, ATS requested an additional $2,000,000 loan or credit extension. Willow Grove approved the request on September 22, 2000. The closing for the additional loan took place on October 6, 2000. At the closing, despite promises to extend $2,000,000 in credit, O'Donnell presented DiCicco with an amendment to the loan agreement providing only an additional $1,548,670 loan. O'Donnell told DiCicco that Willow Grove preferred the other $400,000 to be advanced by a participating lender. However, O'Donnell assured DiCicco that, if a participating lender could not be obtained, Willow Grove would provide the additional $400,000 loan. O'Donnell also authorized ATS to issue checks that day totaling approximately $500,000 and promised that Willow Grove would honor those checks even if ATS did not have sufficient funds in its account. In reliance on this promise, ATS issued approximately $500,000 in checks to the United States Post Office to cover the mailing of ATS's catalogs. When the checks were presented to Willow Grove, however, only one of the checks were honored. As a result, the Post Office refused to mail the catalogs and ATS's business "was destroyed."

On or about January 5, 2001, Willow Grove confessed judgment against ATS, DiCicco and Woodhaven in the Bucks County Court of Common Pleas, seeking to recover monies under the loan agreement. *See Willow Grove Bank v. ATS Products Corp., et al.,* Bucks County C.C.P. 01–00122–17–1. On January 18, 2001, ATS, DiCicco and Woodhaven filed a Verified Petition to Strike Off, or Alternatively, to Open Judgment Entered by Confession, and to Stay Execution ("Petition to Strike"). On March 7, 2001, ATS filed a petition under Chapter 11 of the Bankruptcy Code. As a result of the bankruptcy filing, DiCicco alleges ATS was able to remain in the Woodhaven property without paying rent until approximately December 2001, leaving Woodhaven unable to obtain a new tenant to cover its monthly mortgage payments. In June 2001, Allied Capital SBLC Corporation, Woodhaven's mortgagor, declared Woodhaven in default of its mortgage agreement and filed a confession of judgment action in the Bucks County Court of Common Pleas. *See Allied Capital SBLC Corp., v. 1750 Woodhaven Drive, L.P.,* et al., Case No. 01–004203–25–1.

DiCicco filed the instant action against Willow Grove on October 10, 2002. The complaint originally contained eight counts: breach of the loan agreement, breach of oral contract, fraud, negligent

misrepresentation, breach of fiduciary duty, unjust enrichment, conversion and negligence. On November 18, 2002, before a responsive pleading was filed, DiCicco filed an amended complaint, adding a claim for declaratory judgment. On December 4, 2002, Willow Grove filed and Answer and Counterclaims against DiCicco and Woodhaven for judgment under the loan agreement and for fraudulent transfer. On December 24, 2002, Woodhaven filed counterclaims against Willow Grove for breach of the loan agreement, breach of oral contract, fraud, negligent misrepresentation, breach of fiduciary duty, negligence, and declaratory judgment.

DiCicco filed a Second Amended Complaint, with leave of the Court, on January 23, 2003. In the Second Amended Complaint, DiCicco added Marcel, Fewer, and O'Donnell as parties on the fraud, negligent misrepresentation, breach of fiduciary duty, and negligence claims. DiCicco also added claims against Willow Grove for violation of Gramm–Leach–Bliley Act and for breach of contract to preserve privacy.

On July 14, 2003, Woodhaven filed additional counterclaims: for breach of the loan agreement and breach of oral contract against O'Donnell; for fraud, negligent misrepresentation, breach of fiduciary duty and negligence against O'Donnell, Marcel and Fewer; and for declaratory judgment against Marcel and Fewer. By agreement reached by the parties on June 16, 2003, all of Woodhaven's counterclaims against O'Donnell, Marcel and Fewer are deemed to have been filed on March 18, 2003.

Presently before the Court is DiCicco's Motion for Leave to File a Third Amended Complaint against O'Donnell and O'Donnell's Motion to Dismiss Woodhaven's Counterclaims.

## II. DISCUSSION

### A. MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

#### 1. Standard of Review

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The rule embodies the liberal pleading philosophy of the federal rules. The Third Circuit has held that this liberal philosophy limits a district court's discretion to deny motions to amend, permitting denials only if a plaintiff's delay in seeking amendment is "undue, motivated by bad faith, . . . prejudicial to the opposing party," *Adams v. Gould, Inc.,* 739 F.2d 858, 864 (3d Cir. 1984) (citations omitted), or when the amendment would be "futile." *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1434 (3d Cir.1997). In "assessing 'futility,' the district court applies the same standard of legal sufficiency" used in 12(b)(6) motions. *Id.* Accordingly, the court must "accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them," and deny a motion to amend only "where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990).

#### 2. Discussion

O'Donnell argues that the Motion for Leave to Amend the Complaint to add claims against him for breach of the loan agreement and for breach of oral contract should be denied because the claims are futile. In support of this argument, O'Donnell contends that he cannot be held personally liable under the loan agreement because DiCicco knew that O'Donnell was acting merely as an agent for Willow

Grove, and that he was not authorized to approve a loan. According to O'Donnell, these facts preclude liability under well-settled principles of agency and § 329 of the Restatement (Second) of Agency.

DiCicco counters that in promising to procure the $2,000,000 loan, O'Donnell impliedly warranted that he had the authority to bind Willow Grove. Under Pennsylvania law, this implied warranty of authority constitutes a basis for personal liability on a contract. *See Kribbs v. Jackson*, 387 Pa. 611, 623–24, 129 A.2d 490 (1957). In *Kribbs*, the Supreme Court of Pennsylvania adopted § 329 of the Restatement (Second) of Agency, which states in pertinent part:

> A person who purports to make a contract, conveyance or representation on behalf of another who has. full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized.

*Id.; Kribbs*, 387 Pa. at 623–24, 129 A.2d 490. Thus, DiCicco argues, the claims for breach of the loan agreement and breach of oral contract against O'Donnell are not futile.

■ On the present state of the record, the Court concludes that the contract claims against O'Donnell are not futile. O'Donnell correctly argues that he would not be personally liable under the loan agreement if DiCicco knew, despite O'Donnell's alleged promises to procure the $2,000,000 loan, that he did not have authority to approve a loan. on behalf of Willow Grove. *See Id.* However, whether DiCicco had such knowledge is a factual issue that is not raised in any of DiCicco's pleadings. Thus, it is not properly before the Court. This issue may be appropriately considered in a motion for summary judgment. However, on the current state of the record, the Court rejects this argument for denying the Motion for Leave to File a Third Amended Complaint.

■ The Court also rejects O'Donnell's argument that any oral agreement entered into by O'Donnell would be a suretyship agreement, requiring a written contract under the Statute of Frauds. The Restatement (Second) of Agency, § 329, grounds personal liability on the implied condition that an agent has the authority to enter into the contract on behalf of a principal, not on any express promise to guarantee the debt. Thus, § 329 operates as a warranty, not as a guaranty. A writing is therefore not required under the Pennsylvania statute of frauds. 33 Pa. C.S.A. § 3.

As the implied warranty of authority is grounded in the contract that the agent purports to enter on behalf of the principal, the agent may take advantage of any statute of frauds defenses that would be available to the principal.[3] Whether Willow Grove has such a defense, however, has not been addressed in the motion papers. Thus, on the present state of the record, the Court grants DiCicco's Motion for Leave to File a Third Amended Complaint, without prejudice to O'Donnell's

---

**3.** The Comments of the Restatement (Second) Agency § 329 elaborates on this point, stating:

> [if] the contract as made would have been unenforceable against the principal even though the agent were authorized, the agent is not liable unless, in spite of such enforceability, the purported principal would have performed if he had authorized the agent to make the agreement. Thus, in the case of an oral executory contract within the Statute of Frauds, the unauthorized agent is not liable if the principal fails to perform on the ground that the contract is not in writing.

right to raise any defenses warranted by the facts by a summary judgment motion after completion of relevant discovery and/or at trial.

## B. MOTION TO DISMISS 1750 WOO-DHAVEN DRIVE, L.P.'S COUN-TERCLAIMS

### 1. Standard of Review

On a motion to dismiss under Rule 12(b)(6), a court must "accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them," and grant the motion only "where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).

In deciding a motion to dismiss under Rule 12(b)(6), "a court may refer to certain documents apart from the complaint. For example, a court may judicially notice matters of public record and other facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In re ATI Technologies, Inc., Securities Litigation*, 216 F.Supp.2d 418, 430 (E.D.Pa.2002)(citing *Pension Benefit Guaranty Corp.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

### 2. Discussion

O'Donnell argues in his Motion to Dismiss that Woodhaven has disguised its tort claims in breach of contract language in order to circumvent the statute of limitations bar. In support of this position, O'Donnell reasserts his argument that an agent acting on behalf of a disclosed principal cannot be held personally liable on a contract. As these issues were addressed in Section II(A) of this Opinion, the Court will not repeat its analysis. O'Donnell's Motion to Dismiss Woodhaven's claims for breach of the loan agreement and breach of oral contract are therefore denied without prejudice to O'Donnell's right to raise this and any other appropriate defense by motion for summary judgment after completion of relevant discovery and/or at trial.

Next, O'Donnell argues Woodhaven's tort claims are barred by the statute of limitations. The parties agree that the tort claims are governed by a two-year statute of limitations and that Woodhaven's counterclaims against O'Donnell are deemed to have been filed on March 18, 2003. Thus, the question before the Court is whether the tort claims accrued more than two years prior to the date the counterclaims were deemed filed, i.e., prior to March 18, 2001.

■■ In Pennsylvania, a cause of action accrues on the date the injury was sustained, or when "a party has a legal right to institute suit and can maintain a successful action." *ITG, Inc. v. Price Waterhouse*, 697 F.Supp. 867, 870–71 (E.D.Pa.1988)(citing *Kapil v. Assoc. of Pa. State College and Univ. Faculties*, 504 Pa. 92, 470 A.2d 482 (1983)). "Lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. . . . It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *Lang v. Cont'l Assur. Co.*, 54 Fed.Appx. 72, 74 (3d Cir.2002) (citing *Cappelli v. York Operating Co., Inc.*, 711 A.2d 481, 484–85 (Pa.Super.1998)) (internal quotations and citations omitted).

■■ The discovery rule provides a limited exception to the statute of limitations bar by tolling the date that the statute limitations begins to run until the time that the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct. *Id.* Where the

discovery rule is invoked, "the limitations period begins to run when the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs to investigate to determine whether he is entitled to redress." *Id.* (internal quotations and citations omitted).

■ According to O'Donnell, Woodhaven was "injured" for statute of limitations purposes when ATS was unable to pay its rent in or around October 2000 as a direct result of Willow Grove's alleged breach of the loan agreement. Thus, O'Donnell argues, Woodhaven's tort claims are now time-barred.

In response, Woodhaven argues that the earliest date at which it could have been injured, was April 10, 2001, when Woodhaven was prohibited from disposing of its property pursuant to an Order of the Bucks County Court of Common Pleas. Woodhaven claims that, prior to that time, it did not know that "it would be completely unable to fund its obligations to Allied Bank," and thus, did not suffer an injury for statute of limitations purposes.

■ The Court rejects Woodhaven's arguments. While a court must accept as true all facts alleged in a complaint on a 12(b)(6) motion, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (citations omitted). Accordingly, the Court need not accept Woodhaven's bald assertion that it suffered no injury until April 10, 2001, when the record before the Court clearly demonstrates otherwise. In reaching this conclusion, the Court notes that Woodhaven's first two claims against O'Donnell—breach of the loan agreement and breach of oral contract—are contract claims. Under Pennsylvania law, a contract claim accrues when the contract is breached. *See, e.g., Packer Soc. Hill Travel v. Presby. Univ.*, 430 Pa.Super. 625, 631, 635 A.2d 649, 652 (1993). Woodhaven's Counterclaim states that Willow Grove breached the loan agreement when it failed to honor postage checks issued by ATS on or around October 6, 2000. (Counterclaim of 1750 Woodhaven Drive, L.P. Against Willow Grove Ban, Fred Marcel, Thomas Fewer and Kevin O'Donnell ("Woodhaven Counterclaim"), ¶ 37). Thus, under Pennsylvania law, the breach of the loan agreement and breach of oral contract claims accrued in or around October 2000 when Willow Grove failed to honor the checks.

Because the acts or omissions that underlie the breach of contract claims also form the basis for Woodhaven's tort claims, the Court concludes that these tort claims accrued at the same time. Willow Grove's alleged failure to provide the full $2,000,000 loan promised by O'Donnell is the basis for the fraud, negligent misrepresentation, negligence and breach of fiduciary duty claims. Accordingly, to the extent that Woodhaven has viable tort claims against Willow Grove, "the occurrence of the final significant event necessary to make those claims suable," and thus trigger the statute of limitations, took place when Willow Grove dishonored the checks made payable to the post office in or around October 2000. *Mack Trucks, Inc. v. Bendix–Westinghouse–Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir.1966). The tort claims are, therefore, time-barred unless the running of the statute of limitations can be tolled under the discovery rule.

■ The Court concludes that to the extent that Woodhaven has viable arguments under the discovery rule, the running of the statute of limitations cannot be tolled beyond January 5, 2001. On that date, Willow Grove filed a confession of judgment action against ATS, Woodhaven

and DiCicco for monies under the loan agreement. (Counterclaim of 1750 Woodhaven Drive, L.P. Against Willow Grove Bank, ¶ 48). *See Willow Grove Bank v. ATS Products Corp., et al.,* C.C.P. No. 01–000122–17–1. The Court takes judicial notice of the complaint in that action, in which Willow Grove alleged that ATS issued checks in excess of its account balance in violation of the loan agreement.[4] *See* Complaint in Confession of Judgment Action, ¶ 12; *Zahn v. Transamerica Corp.* 162 F.2d 36, 48 (3d Cir.1947)(court may take judicial notice of pleadings because they are part of the public record). This allegation specifically addresses the issue of overdrawn checks and should have reasonably alerted Woodhaven to the fact that Willow Grove had not honored the checks made payable to the Post Office for postage. At minimum, the complaint put Woodhaven on notice of "sufficient critical facts" to require investigation of any potential claims by Woodhaven under the discovery rule. *Lang v. Cont'l Assur. Co.,* 54 Fed.Appx. 72, 74 (3d Cir.2002) (citing *Cappelli v. York Operating Co., Inc.,* 711 A.2d 481, 484–85 (Pa.Super.1998)) (internal quotations and citations omitted)

Indeed, Woodhaven's Petition to Strike, filed January 18, 2001 in the confession of judgment action, demonstrates that Woodhaven knew that Willow Grove had dishonored the checks more than two years prior to the date that Woodhaven's counterclaims were deemed filed. *See* Petition to Strike, ¶ 33 (alleging that "in breach of and contrary to its representations, assurances and agreement, and without knowl-

edge or consent of the Defendants, Willow Grove failed to honor and in fact bounced the postage checks.") Thus, to the extent that Woodhaven has any viable arguments under the discovery rule, those arguments cannot toll the running of the statute of limitations beyond the date the confession action was filed, January 5, 2001. Woodhaven's tort claims against O'Donnell are, therefore, time-barred because they are deemed to have been filed on March 18, 2003, more than two years later.

## III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff Brenda DiCicco's Motion to File a Third Amended Complaint without prejudice to Defendant Kevin O'Donnell's right to raise the issues addressed in this motion by motion for summary judgment after completion of relevant discovery and/or at trial. The Court grants in part and denies in part Defendant Kevin O'Donnell's Motion to Dismiss 1750 Woodhaven Drive, L.P.'s Counterclaims as follows: the Motion to Dismiss the claims for breach of the loan agreement and breach of oral contract is denied; the Motion to Dismiss is granted as to the fraud, negligent misrepresentation, breach of fiduciary duty and negligence claims on statute of limitations grounds.

---

4. In taking judicial notice of the complaint filed in the confession action, the Court does not assume the truth of any of Willow Grove's allegations contained in that complaint. The complaint merely establishes that Woodhaven had notice of alleged wrongdoing by Willow Grove so as to trigger a duty to investigate the claims under the discovery rule. *Lang v. Cont'l Assur. Co.,* 54 Fed.Appx. 72, 74 (3d Cir.2002) (citing *Cappelli v. York Operating Co., Inc.,* 711 A.2d 481, 484–85 (Pa.Super.1998)) (internal quotations and citations omitted). As in the case of hearsay, a document can be used to establish notice without assuming the truth of any statements contained in the document. *See Parham v. Johnson,* 126 F.3d 454, 460 (3d Cir.1997).